**UNITED STATES of America,**
Appellant and Cross-Appellee,

v.

**TWIN CITY POWER COMPANY,**
Appellee and Cross-Appellant.
**(Tract No. C–215).**

**UNITED STATES of America,**
Appellant and Cross-Appellee,

v.

**TWIN CITY POWER COMPANY,**
Appellee and Cross-Appellant.
**(Tracts Nos. F–500 and H–700).**

**UNITED STATES of America,**
Appellant and Cross-Appellee,

v.

**TWIN CITY POWER COMPANY,**
Appellee and Cross-Appellant.
**(Tracts Nos. F–541 (part) and H–732).**
Nos. 7427–7429.

United States Court of Appeals
Fourth Circuit.

Argued June 13, 1957.

Decided July 15, 1957.

Rehearing Denied Sept. 18, 1957.

Harold S. Harrison, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Joseph E. Hines, U. S. Atty., Spartanburg, S. C., Robert A. Clay, Asst. U. S. Atty., Greenville, S. C., Roger P. Marquis and Fred W. Smith, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant and cross-appellee.

David W. Robinson, Columbia, S. C., for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

PARKER, Chief Judge.

This is the second time that we have had before us these three condemnation cases involving compensation for the taking of lands on the Savannah River. Commissioners appointed by the court below to value the lands filed a report showing that, when considered in connection with their availability for water power purposes, they had a value of $267.02 per acre, or a total value of $471,904.45, but that, as agricultural or wild forest lands, they had a value of approximately $37 per acre, or a total value of $60,293 for the 1,610.8 acres owned by the defendant in fee simple. The District Judge, without passing upon the valuation for agricultural and forestry purposes, approved the valuation based upon their availability for water power purposes (D.C., 114 F.Supp. 719), and this court affirmed. United States v. Twin City Power Co., 4 Cir., 215 F.2d 592. The Supreme Court granted certiorari and reversed, holding that the availability of the lands for water power purposes might not be considered in valuing them for the purpose of determining just compensation on condemnation by the government. 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240.

On remand, the District Judge, sitting with the District Judge for the Southern District of Georgia, who had jurisdiction with respect to the lands on the Georgia side of the river, reviewed the evidence and the findings of the commissioners as to the value of the lands for agricultural and forestry purposes. He held the findings with respect to these values to be clearly erroneous and found the correct value of the lands, without considering their availability for power development, to be around $80 per acre, or a total of $131,388, for which he entered judgment. He held that no recovery could be had for flowage easements owned by defendant power company over 156.56 acres of land to which it did not hold fee simple title. The government has appealed from the judgment fixing the value of the lands, contending that the amount thereof is excessive and

that the judge transcended his powers in overruling the findings of the commissioners. The power company has appealed from the holding that it was not entitled to any compensation for the taking of the flowage easements which it held.

We think that the District Judge was justified in holding the report of the commissioners as to the valuation of the land for agricultural and forestry purposes to be clearly erroneous and substituting a valuation at which he had arrived after a careful study of the testimony; and weight is added to his action by reason of the fact that the District Judge from Georgia, sitting with him and reviewing the same record, took similar action. The commissioners had made their valuation at a time when it was thought that the highest value of the land was that arising from its availability for water power purposes; and, as this value was far above its value for agricultural and forestry purposes, they gave little attention to the latter, contenting themselves with a brief statement with regard thereto at the end of a lengthy report dealing principally with value for water power purposes. In reporting on value for agricultural and forestry purposes, they adopted the valuation placed upon the land by a witness Cox, a furniture dealer, cattle raiser and sawmill operator, who was not shown to have had any special qualifications for valuing lands in that community, and ignored the testimony of two experienced land bank appraisers who were eminently qualified to appraise them. With respect to the testimony of these appraisers, the trial judge said:

"Twin City offered two experienced land appraisers. One, W. N. Henderson of Ninety-Six, in Greenwood County, South Carolina, is a Clemson College graduate with 14 years of experience as a Federal Land Bank appraiser and 4 years with FHA. The other, Benjamin R. T. Todd, was educated at Clemson and at the Naval Academy. He had long years of experience as Senior Ap-

praiser with the Federal Land Bank in Columbia. Each has appraised many tracts of land in the area of the Clark Hill reservoir. Both of these witnesses, as well as the witnesses for the United States, have testified before me in other condemnation cases.

"Mr. Henderson, after detailed study of the several tracts being considered, determined that the principal agricultural uses of these lands were for pasturage to feed cattle, which at the time of taking was an important and growing use of lands in this area, and for the growing of pine. Some 300 acres of bottom land were also useful for row crops. All of the witnesses for both sides agreed that raising cattle and pine had become the chief use of lands in this area, though row crops were still planted in the bottoms.

"Mr. Henderson concluded that, aside from the value of timber and pulp wood on these tracts, the 300 acres of bottom land was worth $100 per acre and the other 1300 acres had a value of $85 per acre. In reaching these conclusions, Mr. Henderson took into consideration the amount it would take to put land into pasturage condition, the yield from tree farming, the price of timber and pulp wood, the demand for such lands. He valued the timber on the properties at $17,000 and the strip of land used for a railroad (5.80 acres) at $1500. His total valuation for Twin City's South Carolina properties was $159,425.

"Mr. Todd's valuation at $100 per acre aggregated $161,080."

The trial judge pointed out that the chief land witness relied upon by the government had never previously sold or appraised land in this community and that, although he made his valuation on the basis of a comparison of sales, he used only seven sales as a basis of comparison, although he had a list of 400 transfers of rural lands in the county, that five of the seven occurred a year or more before the taking and that he admitted that to buy land in the county at the time of the taking one would have had to pay a much higher price than his appraisal. As to the witness Cox, whose valuation was adopted by the commissioners and another witness relied on by the government, the judge said:

"The Commissioners in their finding followed the appraisal of James M. Cox who testified for the Government. Mr. Cox is a furniture dealer, a cattle raiser and a sawmill operator. He had no experience in handling real estate for others and little for himself. Instead of testifying as to market value he appraised so as to allow for 'making a sawmill man's profit on it.' The testimony does not show how much below market value this is. He was unwilling to state the land's worth for pasture though he stated that one of its best uses was for raising cattle. His is not the type of testimony on which an award should be based when there is in the record so much more reliable evidence.

"Another government witness, the Augusta broker Gould Barrett, had never inspected the Twin City lands, had not sold any lands in McCormick County in the five years before his testimony in his case, and was unfamiliar with timber prices. These witnesses for the United States placed a per acre value on the Twin City lands of between $15 and $25 per acre. The Commissioners, adopting the testimony of James M. Cox on land and Clark Honnold on timber, added a value of $5 per acre for assembling and arrived at a total value of about $60,000 as compared with the Henderson and Todd appraisals of about $160,000.

"The findings of the Commissioners as to the agricultural value of these South Carolina lands based on the Cox appraisal are clearly erroneous as that term is defined hereinabove."

■ The government argues that because there was substantial testimony supporting the findings of the commissioners and because they saw and heard the witnesses, the trial judge was bound to accept their findings. If this were the law, the right of review vested in the trial judge by Rule 53, Fed.Rules Civ. Proc., 28 U.S.C.A., would amount to little, for almost always the master or commissioners see and hear the witnesses and seldom do they render a report which can be said to be without substantial support in the evidence. It was the purpose of the rule, where there is a trial without a jury, to place ultimate responsibility for the findings of fact upon the judge. Where there has been a reference to a master, the master's findings are entitled to special weight because he has seen and heard the witnesses but they are not given the effect of a verdict by a jury. The language of the rule is that the court shall accept the master's findings unless clearly erroneous. This is manifestly a guide to be followed in the exercise of the discretion vested in the District Judge, not a limitation upon his power. The rule applicable is well stated by Judge Bratton, speaking for the Court of Appeals of the Tenth Circuit in United States v. Waymire, 10 Cir., 202 F.2d 550, 553, as follows:

"Under the plain language of Rule 53, it is the duty of the court to accept the findings of fact made by a master unless they are clearly erroneous. But the findings of a master may be modified in part, or rejected in toto, if they are clearly erroneous. In like manner, under the equally clear language of Rule 71A (h), the findings and awards of a commission shall be accepted unless they are clearly erroneous. But they may be modified in part, or rejected in toto, if they are clearly erroneous. And even though there is evidence to sustain findings of a master or a commission, as the case may be, they are clearly erroneous if the reviewing court on the entire evidence has the definite and firm conviction that a mistake has been committed."

■ We review the District Judge, not the commissioners; and under Rule 52(a) we may not set aside his findings unless they are clearly erroneous. When he has set aside the findings of a master or commissioners, we must give consideration to the fact that they saw and heard the witnesses and that he did not, and we must pass upon his findings with this in mind; but, unless we can then say that his findings are clearly erroneous when viewed in this light, we must accept them. In the case before us, we cannot say that the findings of the judge were clearly erroneous. On the contrary, we think that he has demonstrated that they rest upon a reasonable basis and that his overruling of the report of the commissioners and adopting a valuation different from theirs should be sustained.[1]

■ There is no merit in the contention of the government that the judge improperly valued the property by adding the value of the timber to the value of the land. The record shows that the witness Henderson arrived at his valuations of the land as a whole by adding the value of the timber to the value of the land considered without the timber. The judge accepted the valuation of the witness Honnold as to what the timber was worth, which was approximately $4,000 less than the value placed on it

1. For a condemnation case in which the action of the trial judge was sustained in overruling the findings of commissioners, see United States v. 44.00 Acres of Land, 2 Cir., 234 F.2d 410, 414. For a case in which the action of a trial judge was sustained in overruling the findings of a master, see Krinsley v. United Artists Corporation, 7 Cir., 235 F.2d 253, 257–260. For cases in which appellate courts have set aside concurrent findings of the master and the trial judge, see Beckley Nat. Bank v. Boone, 4 Cir., 115 F.2d 513, 515–516; H. F. Wilcox Oil & Gas Co. v. Diffie, 10 Cir., 186 F.2d 683, 696; Slattery Company v. United States, 5 Cir., 231 F.2d 37, 43; Baltimore Dairy Lunch v. United States, 8 Cir., 231 F.2d 870.

by Henderson. He did not, however, add this valuation to Henderson's valuation of the land, but valued the entire property at $131,388, which was more than $9,000 less than the valuation placed by Henderson on the land without the timber. It was, of course, proper for the judge to take the value of the timber into consideration in valuing the property. See Cade v. United States, 4 Cir., 213 F.2d 138.

■ We think that the judge was in error, however, in denying the company compensation with respect to the taking of the flowage easement over the 156.56 acres, as to which the company did not own the fee simple interest. It will not do to say that the flowage easement has no value except for power purposes and that the Supreme Court has ruled that this may not be considered on the question of due compensation. The answer is that the owners of the land are entitled to recover for the taking thereof by the government and that, where the owner of the fee has parted with the flowage easement to another, that other, and not the owner of the fee, is entitled to recover the part of the compensation attributable to the taking of the easement. We dealt with this precise question in our recent decision in United States v. 2979.72 Acres of Land in Halifax County, Virginia, 4 Cir., 235 F.2d 327, rehearing denied 237 F.2d 165, where we said (235 F.2d at pages 329–330):

"It is argued that the government should not be required to pay anything to the power company, for the reason that the flowage rights that the power company has acquired are of value only for the purposes of water power development. The answer is that the conveyance of flowage rights by the owner of the land to the power company vested in the latter the interest in the land that is being taken by the government here in the condemnation proceeding and entitles it to compensation for the taking of such interest. See United States v. Welch, 217 U.S.

333, 30 S.Ct. 527, 54 L.Ed. 787. The proposition that because the government has obtained from the owner of the fee a conveyance for which it has paid only one dollar (evidently accepted because the remaining interest in the land had no value after the conveyance of the easement to the power company), it may acquire by condemnation the right to flood the land without paying anything to the owner of the flowage easement, has nothing to commend it either in logic or in common sense. If Mrs. Williams were the owner of the entire interest in the land, no one would contend that she would not be entitled to compensation for the condemnation of flowage rights by the government. Where these flowage rights have been conveyed to another, there is no reason in law, in equity, in good conscience or in common honesty why the compensation to which she would otherwise have been entitled should not be paid to the one to whom such rights have been conveyed."

In denying the petition for rehearing, we said:

"A petition for rehearing insists that since the flowage easement of the power company had no value to it except for water power purposes, and since value for such purposes cannot be considered, it is not entitled to any compensation whatever for the destruction of its easement as a result of the government's taking. The answer is that the taking by the government is a proceeding in rem. It must pay as compensation for the taking the amount by which the value of the land is decreased as a result of the taking of the flowage easement, and the owner whose interest is damaged as a result of the taking of that easement is entitled to the compensation. There can be no question but that the power company here had acquired the interest in the land, i.e. the flowage rights, which the gov-

ernment is taking by condemnation, and that compensation for such taking should be made to the power company as the owner of that interest. And there can be no question, furthermore, but that the compensation to be paid is, not the value of that interest to the power company, but the difference in the value of the land with and without the flowage easement, not considering its value for water power purposes. The case is not one of paying compensation to the owner of the land for the imposition of an additional or second easement, but of allocating compensation between the owner of the fee and the owner of a flowage easement which is destroyed as a result of the taking." [237 F.2d 166.]

No one would contend that the government would not be liable to the owner of fast land which it floods for the difference in the value of the land with and without the flooding, excluding, of course, its value for power development. When a flowage easement has been granted to another, it seems equally clear that the owner of such easement is entitled to the part of the compensation attributable to the destruction of the easement. The compensation to be paid must be measured, of course, by the value of the land for agricultural and forestry purposes without reference to its value for power purposes; and when this value has been ascertained it must be apportioned between the owner of the fee and the defendant power company, the owner of the easement. If it should appear that the value of the land for agricultural and forestry purposes has been practically destroyed by the grant of the easement, then the power company would be entitled to substantially all of the compensation. If, however, it should appear that the land has value for agricultural and forestry purposes, notwithstanding the grant of the easement, the owner of the fee would be entitled to this, the power company being entitled to the difference between this and what the value

would be for agricultural and forestry purposes without the easement. The position that the owner of the fee cannot recover for the flooding because he has parted with the flowage easement and that the owner of the easement cannot recover because he does not own the fee, has nothing to commend it either in law or in reason.

The judgments appealed from will accordingly be affirmed in so far as they award compensation for the lands as to which the fee simple interest of the power company was taken and will be reversed in so far as they deny compensation with respect to the 156.56 acres over which the power company had a flowage easement and the cases will be remanded for further proceedings not inconsistent herewith.

Affirmed in part, reversed in part and remanded.

On Petition for Rehearing.

PER CURIAM.

■■ A petition for rehearing calls attention to the fact that the government has paid compensation to the owners of the fee in lands over which the power company owns a flowage easement. This, however, does not constitute compensation to the power company for the destruction of the easement conveyed to it prior to the taking by the government. While the value of such an easement for water power purposes may not be considered in awarding compensation, there is no reason why the holder thereof should not receive compensation for the interest in the land which it represents. The right to such compensation manifestly cannot be destroyed by acquiring a conveyance from the owner of the fee, who prior thereto had conveyed to the power company the right to flood the land. As we pointed out in our opinion herein:

"No one would contend that the government would not be liable to the owner of fast land which it floods for the difference in the value of the land with and without the flooding,

excluding, of course, its value for power development. When a flowage easement has been granted to another, it seems equally clear that the owner of such easement is entitled to the part of the compensation attributable to the destruction of the easement. The compensation to be paid must be measured, of course, by the value of the land for agricultural and forestry purposes without reference to its value for power purposes; and when this value has been ascertained it must be apportioned between the owner of the fee and the defendant power company, the owner of the easement. If it should appear that the value of the land for agricultural and forestry purposes has been practically destroyed by the grant of the easement, then the power company would be entitled to substantially all of the compensation. If, however, it should appear that the land has value for agricultural and forestry purposes, notwithstanding the grant of the easement, the owner of the fee would be entitled to this, the power company being entitled to the difference between this and what the value would be for agricultural and forestry purposes without the easement."

■ It is said that the power company has sustained no loss because the only value to it of the right to flood the land was for the development of water power, which may not be considered as an element of value for purposes of compensation. It is elementary, however, that compensation is determined on the basis of market value, not on the basis of the use which the owner is making or may make of it. 18 Am.Jur. p. 877; Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236. Where land is taken the owner or owners must be awarded this value, and where an easement has been conveyed to another

by the owner of the fee, the owner of the easement is entitled to share in the award to the extent of the value of the easement, excluding, of course, its value for water power purposes. Settlement with the owner of the fee in such case for his interest in the land cannot foreclose the right of the owner of the easement to compensation. Unquestionably the conveyance of a flowage easement conveys a valuable interest in the land and one which depreciates the value of the interest remaining in the owner of the fee, even though its value for power development may not be considered; and, if the government may acquire the right to flood the land by taking a conveyance of the interest remaining in the fee simple owner after the conveyance of the easement, no amount of sophistry can obscure the fact that it is acquiring for nothing the interest represented by the easement. The Supreme Court has held that compensation need not be made for the element of value represented by availability for water power development. It has not held that other elements of value may be ignored or that the government may take for nothing an interest in land merely because the land lies along a navigable stream.

The petition for rehearing alleges that a part of the 156.56 acres covered by the company's flowage easement is not being taken by the government in these proceedings; but this is a matter to be considered by the District Court, which will, of course, award compensation only for property taken in the proceedings before it with such damages as are shown to have resulted from the taking. See 18 Am.Jur. p. 905; United States v. Cress, 243 U.S. 316, 327, 37 S.Ct. 380, 61 L.Ed. 746; Campbell v. United States, 266 U.S. 368, 371, 45 S.Ct. 115, 69 L.Ed. 328.

Other questions raised by the petition for rehearing have been fully considered but are so lacking in merit as not to warrant further discussion.

Rehearing denied.