**UNITED STATES of America,**
**Appellant,**

v.

**2979.72 ACRES OF LAND, MORE OR LESS, in the County of Halifax, Virginia, Olive Vaughan Williams, et al., and unknown owners (Tract FF–3100E), Appellees.**

**No. 7882.**

United States Court of Appeals
Fourth Circuit.

Argued June 24, 1959.

Decided Oct. 5, 1959.

---

Harold S. Harrison, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., John Strickler, U. S. Atty., Leigh B. Hanes, Asst. U. S. Atty., Roanoke, Va., and S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., on the brief) for appellant.

Ralph H. Ferrell, Jr., Richmond, Va. (George D. Gibson, Francis V. Lowden, Jr., and Hunton, Williams, Gay, Moore & Powell, Richmond, Va., on the brief), for appellee Virginia Electric and Power Co.

Before SOPER and HAYNSWORTH, Circuit Judges, and THOMSEN, District Judge.

SOPER, Circuit Judge.

The principal question in this case is whether an electric power company, which purchased from a riparian owner the right to flood the land, is entitled to any compensation when the United States takes over the right from the power company by condemnation. The owner of the fee in the land, having conveyed the flowage rights to the power company and thereby destroyed the value of the fee, agreed to convey the fee to the United States for $1.00, subject to the power company's rights, and the Government contends that the power company should be paid no more because its right to flood the land has no value since it has no right to use the waters of the stream. If the Government's position is sustained, it will pay nothing for the right to flood the land and use it in connection with its flood control project.

The case first came before us in United States v. 2979.72 Acres of Land, 218 F.2d 524. Condemnation proceedings by the United States were taken in connection with the John K. Kerr Dam and Reservoir, a flood control project on the Roanoke River in Virginia and North Carolina. In issue was the value of 1540 acres of land which the Virginia Electric and Power Company had an easement to flood permanently under a conveyance from Mrs. Olive Vaughan Williams, the owner of the fee. Mrs. Williams had agreed to convey to the Government for $1.00 any interest she may have retained in the land; and the value of the Power Company's interest was the question for decision in the condemnation proceedings to which both Mrs. Williams and the Power Company were made parties. The District Court found that the Power Company was entitled to recover $61,600 for the fee simple value of the land at $40.00 per acre and the Government appealed on the grounds (1) that in fixing the value of the land consideration had been improperly given to its availability for the development of a water power project in a navigable river, and (2) that in any event the Government was not liable for the fee simple value of the land but only for the difference between its value before and after the grant of the easement acquired by the United States.

We rejected the first ground for the reasons set forth in our opinion in United States v. Twin City Power Co., 215 F.2d 592, where we held that the availability of land as a potential power site on a navigable stream constituted an element of value for which just compensation must be made. On the second ground we also upheld the conclusion of the trial court. Since the evidence showed that the right to flood the land permanently left no use of any value to the owner of the fee and that land worth $40.00 an acre before the servitude of the easement was imposed was worth nothing thereafter, we found that the difference between the value of the land before and after the grant of the easement was the same as the fee simple value of the land.

Subsequently our decision in the Twin City case was reversed by the Supreme Court in United States v. Twin City Power Co., 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240, and it was held that, in condemnation of riparian land by the United States in order to improve the navigation of the stream, just compensation does not include the value of the water power in the flow of the stream; and, since we had not followed this rule, certiorari was granted in United States v. 2979.72 Acres of Land, supra, the

judgment therein was vacated and the case was remanded to us for further consideration in the light of the Supreme Court's decision.

Accordingly, we reconsidered the case in United States v. 2979.72 Acres of Land, 235 F.2d 327. In our opinion we pointed out that although the availability of the land as a site for water power development could not be considered in assessing damages against the United States, nothing in the opinion of the Supreme Court held that compensation should not be paid for other elements of value, such as value for agricultural or grazing purposes. In answer to the contention of the Government that the Power Company was entitled to receive nothing for the reason that its flowage rights were of value only for the purposes of water power development, we held that the conveyance of the flowage rights by the owner of the fee to the Power Company vested in the latter an interest in the land that was being taken by the Government in condemnation therefor. The judgment of the District Court was accordingly vacated and the case remanded with direction to award compensation to the Power Company for the difference between the value of the land with and without the servitude of the easement, excluding from the valuation in both instances any element of value arising from the availability of the land for water power purposes. Subsequently, a petition for rehearing filed by the United States was denied, 4 Cir., 237 F.2d 165.

On remand the District Court appointed commissioners to determine the amount of compensation to be paid by the United States. The area of 1540 acres of land over which the Power Company had a flowage easement was part of a larger tract of 7400 acres known as the Falkland tract. The easement of the Power Company comprised the right of permanent flowage over 1540 acres of the land up to a contour level of 321-feet, while the easement condemned by the Government involved the right of permanent and intermittent flowage over 1840 acres of the land up to a level of 330-feet; and it was essential for the Government to acquire what the Power Company owned. The judge directed the commissioners to answer an inquiry, amongst others, as to what was the difference between the fair market value of the total Falkland tract with and without the servitude of the Government's easement, assuming that the easement was over the land up to contour 321 only, involving 1540 acres, excluding from both of such valuations any element of value arising from the availability of such land for water power purposes due to its being situate on a navigable stream. The commissioners were further instructed that in making their determination of fair market value they should disregard the fact that the Power Company had a perpetual flowage easement over some of the land and that Mrs. Williams, the owner of the fee, had made an agreement with the United States and that they should not attempt to determine the value of the respective interests of the owner of the fee or of such flowage easement.

The commissioners found that the difference between the fair market value of the total Falkland tract before and after the taking of the easement to flood 1540 acres was $65,520, including all damages to the owners of the adjacent or remaining properties, and that of this sum $11,720 represented damages to the residue of the tract. The judge confirmed this award and the Government on this appeal now contends the award was erroneous, first, because the Power Company was entitled to only nominal damages since the availability of the site for water power development must be excluded from consideration in making the valuation and, second, because in any event the Power Company was not entitled to any damages to the residue of the estate.

■ It seems plain to us that the flowage easement of the Power Company had substantial market value in its hands in spite of the fact that the availability of land as a potential power site is not an element of value to be considered in the

condemnation by the United States of a riparian owner's rights. Although it is true that the Power Company could not use the waters of the stream for power purposes except with the approval of the United States,[1] it is equally true that neither the United States nor anyone else could use the land in connection with the stream as a power site so long as the Power Company possessed the flowage easement acquired from the owner of the fee. If Mrs. Williams were the owner of the entire interest in the land, no one would contend that she would not be entitled to compensation for flowage rights whether they were condemned or purchased by the Government or by any other person for navigational or power purposes; and her conveyance of the rights to the Power Company transferred to it the right to compensation for them. Obviously, anyone who desired to acquire the rights would expect to pay for them, and their value, whether in the hands of the owner of the fee or of her grantee, would be what they would bring in the open market.

■ In regard to this position, the Government says that a transfer or assignment of a claim to compensation from the United States is barred by the Anti-Assignment of Claims Act, 31 U.S. C.A. § 203, which provides that all transfers and assignments of any claim against the United States are null and void unless made after the allowance of the claim and the ascertainment of the amount due. It is obvious, however, that this statute has no bearing on the point. Mrs. Williams' conveyance was in no sense an assignment of a claim against the United States, for at the time it was made the United States had no interest in the property and no claim against the United States for compensation was in

existence. The Power Company acquired title to an interest in the property in the shape of flowage rights by reason of the deed and was the owner thereof at the time that condemnation proceedings were begun by the United States. It seeks compensation in its own right and not as the assignee of another.[2]

■ The District Judge determined that the value of the interest of the Power Company for which compensation must be paid was the difference, as found by the commissioners, between the market value of the Falkland tract before and after the taking of the easement by the United States amounting to $65,520, comprising $53,800 with respect to 1540 acres of land up to Contour 321 covered by the Power Company's easement and $11,720 for damages to the residue of the tract. There was abundant evidence to support these figures since the estimates of the real estate experts produced by the Power Company were greatly in excess of the amounts found by the commissioners, and the Government offered no evidence in rebuttal.

The Government concedes that the measure of value used by the commissioners under the instruction of the court would be proper if the interest of the owner of a fee rather than the interest of the Power Company were being condemned; but the Government contends that this measure is inapposite to the factual situation before the court since it results in awarding to the Power Company the value of the land for such uses as agriculture and forestry to which the Power Company had no claim. We are told that this mistake of the District Court had its origin in our second opinion in this case, where we said, 235 F.2d at page 329, in obedience to the ruling of the Supreme Court, that the avail-

1. See 16 U.S.C.A. § 797(e) et seq.

2. The decisions in United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 374, 70 S.Ct. 207, 94 L.Ed. 171, and United States v. Shannon, 342 U.S. 288, 292, 72 S.Ct. 286, 96 L.Ed. 321, disclose the purposes of the anti-assignment statute and show that transactions within the literal terms of the statute but not within its purposes may be excluded, such as devolutions of title by force of law without any act of the parties, and the right of an insurance company to collect a claim against the United States to which the company has been subrogated by payment to the insured.

ability of the site for water power development must be excluded in making the valuation of the Power Company's interest, but added that other elements not related to the flow of the stream, such as the value of the land for agricultural or grazing purposes, might be considered.

When this statement is wrenched from the context in the course of the Government's argument it is undoubtedly incorrect insofar as it indicates that the Power Company was entitled to compensation on the theory that it possessed the right to use the land for agricultural and forestry purposes; but the fact is that we made no such holding then and make none now. The statement was made in order to eliminate from the computation any consideration of the value of the property as a power site and to confine attention to other elements of value which the property possessed, and it was not irrelevant. On the contrary it had a direct bearing on the question before the court, for the cost of acquiring a permanent flowage easement over agricultural or wooded land is directly related to the uses for which the land is adapted; and if the exercise of the easement destroys these uses, their value determines the market price of the easement. It goes without saying that owners of farm lands demand at least the value of their lands for agricultural purposes when dealing with purchasers of water power sites, and the Government suffers no injustice in this case when it is required to pay a price which is limited to the value of the lands for ordinary purposes.

The United States complains that the entire amount of the damages to the property has been awarded to the Power Company and none to Mrs. Williams for her interest and hence the United States got no credit for the settlement it made with her as the owner of the fee. The fact is however, as we have shown, that Mrs. Williams had no interest of substantial value in that part of the land covered by the Power Company's easement. She agreed to convey to the United States the right to overflow land to the extent of 1840 acres up to the 330-foot contour line so far as might be necessary for the Government project, subject however to the rights of the Power Company to flood 1540 acres of land up to the 321-foot contour line. In the body of her agreement the purchase price of her rights is stated to be $1.00, and her attorney testified at the hearing below that she made no claim to compensation for the easement over the 1540 acres other than the sum of $1.00 mentioned in the agreement.

In the introductory words of the agreement mention is made of a consideration of $1.00 "and other valuable considerations"; and there was put in evidence correspondence between her attorney and the manager of the Government project, in which the attorney stated that if the Government would accept a conveyance of her riparian rights between Contours 318 (321) and 330 and would not insist upon taking a fee simple title she would be able to retain and develop 1,000 acres of land for a wild game conservation project, which had been long in use, and that she would convey the additional easement for a nominal sum. It would appear from the replies received to this offer and from the condemnation proceedings that the suggestion was accepted and, accordingly, the purchase agreement was executed. It is obvious, however, that the additional considerations mentioned in the agreement referred only to the additional territory between Contour 321 and Contour 330 which the Government desired to acquire. The Government was justified in giving nothing to Mrs. Williams for the right to flood this additional area because of her agreement; but we find no justification for the contention that the Government should not pay the Power Company for the interest which it had acquired in the Falkland tract.

The amount which the District Court awarded to the Power Company was limited to the reduction in the fair market value of the Falkland tract as a result of the easement taken by the Government, assuming that such easement

involved only the 1,540 acres covered by the Power Company's easement. The Power Company and its predecessors had presumably paid for that easement the fair market value of the 1,540 acres for agricultural purposes plus severance damages to the rest of the tract.

The question as to severance damages arises because the commissioners included the sum of $11,720 for severance damages in the total of $65,520 which they found to be the difference between the fair market value of the Falkland tract before and after the taking by the United States of a flowage easement limited to the extent of the flowage easement which belonged to the Power Company. The judge held that the entire amount should be paid as compensation to the Power Company for the taking of its easement. The Government, without waiving its contention that the Power Company had no compensable interest in the property, advances the additional argument that under the settled law severance damages are not allowable in the situation before the court.

■■■■■■ The rule ordinarily applicable when a portion of an owner's land is taken in condemnation is that compensation must be paid not only for the land actually taken but also for damages to the remainder of the tract; but the rule contemplates a single piece or tract of land and does not extend to separate tracts which the owner may have in the same neighborhood unless they are so inseparably connected in use that the injury or taking of one necessarily injures the other. It is also generally held that tracts vested in different persons cannot be considered as a whole although used as one.[3] It is apparent, in view of these decisions, that an inquiry into the question of severance damages was appropriate when the Government condemned part of the Falkland tract, which was held in single ownership by Mrs. Williams subject to the Power Company's easement. The easement acquired by the Power Company had not actually severed the 1,540 acres from the rest of the Falkland tract, but gave the Power Company an executory right to sever, which had value and which the United States has appropriated as part of its condemnation. The evidence produced before the commissioners proved the existence and the amount of such damages and was uncontradicted. The amount of such severance damages awarded to the Power Company was limited by the assumption, in the question put to the commissioners, that the easement taken by the Government ran only to Contour 321 and therefore involved only the 1,540 acres covered by the Power Company's easement. It is of course true that Mrs. Williams and not the Power Company was entitled to the severance damages caused by the taking of the additional easement up to contour level 330, and that she has made a settlement with the Government of all of her claims; but the market value of the interest of the Power Company may nevertheless be measured by what it would cost to acquire it, and this necessarily includes not only the value of the land for agricultural and forestry purposes but also the damages to the remainder of the tract. Anyone who desired to acquire the easement would expect to pay not only the damages suffered by the owner for the destruction of the land for ordinary purposes,

3. United States v. Miller, 1943, 317 U.S. 369, 375–376, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; Bauman v. Ross, 1897, 167 U.S. 548, 574, 17 S.Ct. 966, 42 L.Ed. 270; United States v. Grizzard, 1911, 219 U.S. 180, 184–185, 31 S.Ct. 162, 55 L.Ed. 165, 31 L.R.A.,N.S., 1135; Baetjer v. United States, 1 Cir., 1944, 143 F.2d 391, 394–395, certiorari denied 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618; United States v. Honolulu Plantation Co., 9 Cir., 1950, 182 F.2d 172, 176–179, certiorari denied, 1950, 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602; United States v. Mills, 8 Cir., 1956, 237 F.2d 401; 6 A.L.R.2d 1197; Cole Investment Co. v. United States, 9 Cir., 1958, 258 F.2d 203; McIntyre v. Board of County Com'rs, 1959, 168 Kan. 115, 211 P.2d 59; 18 Am.Jur., Eminent Domain, § 272, p. 912.

but also for the damages inflicted upon the remainder of the tract. The judgment of the District Court will accordingly be affirmed.

Affirmed.