**AUGUSTA POWER COMPANY,**
Appellant-Appellee,

v.

**UNITED STATES of America,**
Appellee-Appellant.

**UNITED STATES of America,**
Appellee-Appellant,

v.

**AUGUSTA POWER COMPANY,**
Appellant-Appellee.

**No. 18150.**

United States Court of Appeals
Fifth Circuit.

April 11, 1960.

Rehearing Denied Aug. 30, 1960.

1

C. A. Mays, Marshall T. Mays, Greenwood, S. C., for appellant.

Harold S. Harrison, Roger P. Marquis, S. Billingsley Hill, Attys., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., W. Reeves Lewis, Asst. U. S. Atty., Savannah, Ga., William C. Calhoun, U. S. Atty., Augusta, Ga., for appellee.

Before RIVES, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

RIVES, Chief Judge.

In view of United States v. Chandler-Dunbar Water Power Co., 1913, 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063, and United States v. Twin City Power Co., 1956, 350 U.S. 222, 76 S.Ct. 259, 100 L. Ed. 240, forbidding an award against the United States in eminent domain proceedings for hydroelectric power value in an interstate navigable stream, the main problem is to discover the basis, if any, for an award to the Augusta Power Company for its flowage easements over fast lands adjacent to the Savannah River.

The United States filed and served on Augusta Power Company its petitions for condemnation and declarations of taking in four civil actions in the Southern District of Georgia, and also in certain actions in the Western District of South Carolina, which are not involved in this appeal. In its answers to these petitions, Augusta Power Company, alleged that the lands taken were part of its holdings of approximately 1,257 acres owned in fee and lying on both sides of the Savannah River and approximately 362 acres over which it had flowage easements in the Southern District of Georgia. All issues of just compensation were referred to commissioners under Rule 71A(h), Federal Rules of Civil Procedure, 28 U.S.C.A. The amounts fixed by the Commission as compensation for the tracts over which Augusta Power Company held fee simple title were paid and accepted, leaving for consideration only the five tracts over which Augusta Power Company held flowage easements.[1]

The instruments upon which the flowage easement claims are based, executed in 1906, provided that the rights granted were "to overflow and back water upon any such portion of said tract of land and islands as they or their heirs or assigns may deem advisable in the erection of any dam or dams for the development of a waterpower on the Savannah River * * *." The Augusta Power Company conceded that "the only use of these flowage easements by anybody would be in connection with and based upon the development of a dam for water power purposes in the Savannah River."

1. Summarized as follows:

| Tract | Acreage | Fee Owner |
|---|---|---|
| E–404 | 41.70 | Savannah River Electric Company |
| E–444 | 128.39 | Savannah River Electric Company |
| E–443 | 88.59 | Twin City Power Company |
| E–458 | 37.68 | Roy Edmunds and Wayne Goolsby |
| E–442 | 101.69 | Fannie Beck Reid |

The Commission found that the fee value of the land taken in 1947 was $40 per acre and that the fee value of the land taken in 1950 was $45 per acre. It went on to hold that 70% of the value of the land taken in 1947 and 75% of the value of the land taken in 1950 represented the value of the flowage easements. On this basis the Commission arrived at awards as follows:

Tract E–404: 41.7 acres at $40 an acre equals $1,668.00, 70% of which is $1,167.60.

Tract E–442: 101.69 acres at $45 an acre equals $4,576.05, 75% of which is $3,432.04.

Tract E–443: 88.59 acres at $45 an acre equals $3,986.55, 75% of which is $2,989.91.

Tract E–444: 128.39 acres at $45 an acre equals $5,777.55, 75% of which is $4,333.16.

Tract E–458: 37.68 acres at $45 an acre equals $1,695.60, 75% of which is $1,271.70.

Accordingly, the total award of the Commission to the Augusta Power Company was $13,194.41, with interest at 6% from the respective dates of taking. The district court affirmed the Commission's report in all respects.

Both parties have appealed, the United States asserting that no compensation whatsoever should have been allowed for the flowage easements, and Augusta Power Company asserting that the amounts fixed as compensation for the flowage easements are too low.

██ In an extensive opinion accompanying its order affirming the report of the Commission and again in an opinion overruling the motion of the United States for new trial, the district court held that the United States had constructive or actual notice of the flowage easements of Augusta Power Company, and, hence, that Augusta Power Company was not bound by prior judgments purporting to fix the value of the fee or the entire value in the lands taken in proceedings of which the Augusta Power Company had no notice. We agree with that holding. We agree also with that part of the opinions of the district court holding the easement deeds valid and enforceable as between the owners of the fee and Augusta Power Company.

The district court followed opinions of the Fourth Circuit in United States v. 2979.72 Acres of Land, etc., 1956, 235 F. 2d 327, on rehearing, 237 F.2d 165, and in United States v. Twin City Power Company, 1957, 248 F.2d 108,[2] in holding that the decision of the Supreme Court in the Twin City case, supra, does not preclude the payment of substantial compensation to the Augusta Power Company for its flowage easements. The district court thought it "quite clear that the government should pay a just compensation for the taking of these lands at a fair value for agricultural and forestry purposes"; and it approved the Commission's method of apportioning that value, viz.: "The criterion for dividing the value of the land is 'the difference in the value of the land with and without the flowage easement'." We agree that Twin City does not preclude the payment of substantial compensation to the Augusta Power Company for its flowage easements, but we disagree as to the method of measuring that compensation.

██ The Government insists that "the Power Company neither had nor claimed anything but a right to flood the lands in connection with the erection of a dam or dams for the development of water power on the Savannah River—the very thing which the Supreme Court has

---

2. To which may now be added the opinion on a subsequent appeal in United States v. 2979.72 Acres of Land, etc., 1959, 270 F.2d 707.

held to be noncompensable as against the United States." The Twin City opinion, however, expressly "put aside such cases as United States v. Kansas City Life Ins. Co., 339 U.S. 799, [70 S.Ct. 885, 94 L.Ed. 1277] where assertion of the dominant servitude in the navigable river injured property beyond the bed of the stream." 350 U.S. at page 225, 76 S. Ct. at page 261. In the case referred to, United States v. Kansas City Ins. Co., it was held that " * * * the navigation servitude does not extend to land beyond the bed of the navigable river." [339 U.S. 799, 70 S.Ct. 889.] Indeed, Twin City itself approves the test of United States v. Appalachian Electric Power Co., 1940, 311 U.S. 377, 427, 61 S.Ct. 291, 309, 85 L.Ed. 243, "If the Government were now to build the dam, it would have to pay the fair value, judicially determined, for the fast land; nothing for the water power." 350 U.S. at page 227, 76 S.Ct. at page 262. Very clearly, the United States is in error when it claims on page 18 of its brief that it "has a dominant servitude which it can exercise in its discretion and without compensation."

If Augusta Power Company had been successful in assembling the necessary lands,[3] and in securing approval of the Federal Power Commission,[4] and thereafter had actually exercised its easements by permanently flooding the lands, their value for agricultural and forestry purposes would have been destroyed. If, with that status, the United States had condemned the lands, the compensation due would be payable to Augusta Power Company. That compensation would not include the hydroelectric power value, but it would embrace Augusta Power's property right to destroy the value of the lands for agricultural and forestry purposes.

At the other extreme, if factors such as difficulty of assemblage of all necessary lands, the increasing economic advantage of steam plants over hydroelectric plants, the need for additional power in the particular area, etc., had made it certain that the flowage easements would never be exercised by the Augusta Power Company or its assigns, *excluding the United States*,[5] then such compensation as might be due would be payable to the owners of the fee title and nothing to the Augusta Power Company.

Between the two extremes just illustrated, the respective values of the fee and of the easement would fluctuate from time to time depending on the probability or improbability of actual exercise of the easement by the Augusta Power Company or its assigns. If all interested parties were before the Court, the *maximum* which the United States would be required to pay would be the value of the lands, not including their value for hydroelectric power purposes. That is, however, a *maximum,* and not necessarily the measure of what the United States would have to pay under any and all circumstances. As said by Mr. Justice Holmes, speaking for the Court in Boston Chamber of Commerce v. City of Boston, 1910, 217 U.S. 189, 195, 30 S. Ct. 459, 460, 54 L.Ed. 725:

"But the Constitution does not require a disregard of the mode of ownership,—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken

---

3. Compare United States v. Cooper, 5 Cir., 277 F.2d 857, and cases cited.

4. See 16 U.S.C.A. § 797(e) et seq.

5. The United States must be excluded as a possible assignee in determining the value of the easement, because the value of the easement must not be enhanced by the special need which the Government

has for it. The Government should not, in fairness, be required to pay a value created by itself. United States v. Cors, 1949, 337 U.S. 325, 333, 334, 69 S.Ct. 1086, 93 L.Ed. 1392; see also United States v. Chandler-Dunbar Water Power Co., 1913, 229 U.S. 53, 76, 33 S.Ct. 667, 57 L.Ed. 1063.

should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained. We regard it as entirely plain that the petitioners were not entitled, as matter of law, to have the damages estimated as if the land was the sole property of one owner * * *."

See also, United States v. Chandler-Dunbar Water Power Co., supra, 229 U.S. at page 80, 33 S.Ct. at page 678.

■ The compensation to be paid is the value of the interest taken. United States v. General Motors Corporation, 1945, 323 U.S. 373, 379, 65 S.Ct. 357, 89 L.Ed. 311. The flowage easement doubtless lessens the value of the fee-owner's interest, but it does not necessarily follow that the amount of such decrease and the value of the flowage easement to its owner are identical. The Augusta Power Company is limited to the value of the legal rights which it possesses. As said by this Court in Messer v. United States, 5 Cir., 1946, 157 F.2d 793, 795, note 5:

"Where, as here, the Government settles with the owner of one interest, the question of compensation for all interest is irrelevant; only the question of just compensation for the interest taken concerns the Government. United States v. Petty Motor Co., 1946, 327 U.S. 372, 374, 66 S.Ct. 372 [596] [90 L.Ed. 729]."

■ Thus, we agree with the Fourth Circuit that the Twin City case does not preclude the payment of substantial compensation for flowage easements over fast lands adjoining a navigable stream, but, with much deference, we disagree with its holding that the compensation to

be paid is not the value of the easement to its holder "but the difference in the value of the land with and without the flowage easement, not considering its value for water power purposes." United States v. 2979.72 Acres of Land, etc., on rehearing, 1956, 237 F.2d 165, 166.[6] It seems to us that the *maximum* compensation payable for the flowage easement under any conceivable circumstances is so much of the value of the lands for agricultural and forestry purposes and for any other uses, not including hydroelectric power value, as the easement owner has a right to destroy or depreciate. That *maximum* is more simply expressed in the criterion adopted by the Commission, i.e., "the difference in the value of the land with and without the flowage easement." Subject to that *maximum*, the actual *measure* of compensation payable for the flowage easement is the value of the easement to its owner. "The question is, What has the owner lost? not, What has the taker gained?" 1 Orgel on Valuation Under Eminent Domain, p. 352.

■ The United States insists that the Augusta Power Company failed to show any substantial value for its easements, while the Power Company asserts that the amounts fixed as compensation for the flowage easements are too low. Since an erroneous standard was used for valuing the flowage easements, and since much confusion and uncertainty existed as to what was the correct standard, we consider it "just under the circumstances"[7] to reverse the judgment and remand the cause for further proceedings not inconsistent with this opinion, and it is so ordered.

Reversed and remanded.

6. See, also, the holding on original hearing that "the government must make compensation on the basis of the difference in the value of the land with and without the easement taken * * *." United States v. 2979.72 Acres of Land, etc., 4 Cir., 1956, 235 F.2d 327, 329. United States v. Twin City Power Co., 4 Cir., 1957, 248 F.2d 108, 113, 114; United States v. 2979.72 Acres of Land, etc., 1959, 270 F.2d 707, 709.

7. 28 U.S.C.A. § 2106.