H. W. LONDON and Nina E. London, t/a
London Construction Company,
Appellees,

v.

TROITINO BROTHERS, INCORPORAT-
ED, Joe Troitino and Tom Troitino,
Appellants.

No. 8384.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 17, 1961.

Decided March 21, 1962.

C. B. Andrews and J. Livingston Dil-
low, Pearisburg, Va. (Dillow & Andrews,
Pearisburg, Va., on the brief), for ap-
pellants.

Bentley Hite, Christiansburg, Va., for
appellees.

Before BOREMAN, BRYAN and
BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

The plaintiffs, H. W. London and Nina
E. London, trading as London Construc-
tion Company, brought this action in the
District Court for the Western District
of Virginia against the corporate defend-
ant, Troitino Brothers, Incorporated, and
the individual defendants, Joe and Tom
Troitino. They alleged that they had
entered into a written contract on De-
cember 17, 1956, to grade, excavate and
move earth and rocks on the Blue Ridge
Parkway in Amherst County, Virginia,
as subcontractors for the defendants.
They further alleged that while they
were in the process of performing the
written contract, they had entered into
oral agreements with the defendants to
do additional work of a somewhat similar
nature at specified unit prices. They
also alleged that the work had been prop-

erly performed but that the defendants failed and refused to pay therefor in accordance with the several agreements between the parties. The corporate defendant answered denying that any agreements had been entered into other than the specified written contract. The individual defendants answered denying any contract had been entered into between them and the plaintiffs under which work was performed by the plaintiffs. In the course of the trial below the individual defendants were dismissed from the case. No objection was taken from this action.

Although the corporate defendant Troitino Brothers, Incorporated, indicated its intention to demand jury trial in its Answer, this right was subsequently waived by counsel by moving the Court that the cause be referred to a Special Master to find the facts and to draw conclusions of law therefrom on all the issues raised by the pleadings. In this counsel for the plaintiffs concurred and the District Court ordered the matter referred to one Leroy Moran as Special Master to find the facts and the law and to report his findings to the Court. The Special Master held three separate hearings during which over five hundred pages of testimony were taken and transcribed. His findings of fact and conclusions of law were subsequently reported to the District Court. To this report counsel for both the plaintiffs and the defendant filed numerous exceptions and lengthy briefs. After hearing the parties, the District Court entered an order confirming the report of the Special Master in all but one relatively insignificant item and entering judgment thereon for the plaintiffs in the sum of $2,798.06 with costs.

From this judgment the defendant appeals, raising only questions of fact concerning two items found in the Master's report.

■ ■ Contrary to the contention of counsel for both sides, neither the District Court nor this Court is bound by the Virginia law with respect to the weight to be given to the findings of fact by the Master. The District Court is controlled by the provisions of Rule 53(e)(II) which provides that that court shall accept the Master's findings of fact unless clearly erroneous. Esdale v. Edwards, 28 F.R.D. 390 (D.C.W.D.N.C. 1961). We are bound by the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., wherein it is provided that in all actions tried upon the facts without a jury, this Court shall not set aside the findings of the District Court unless clearly erroneous. The findings of a Master, to the extent that the Court adopts them, shall be considered to be the findings of the Court below. Carpenter v. Union Insurance Society of Canton, Ltd., 284 F.2d 155 (4 Cir. 1960).

■ While the evidence before the Master was conflicting on many aspects of the case, a careful reading of the full record does not leave us with the feeling that his findings were clearly erroneous. From the record it appears that the defendant Troitino Brothers, Incorporated, as prime contractor entered into a contract with the Bureau of Public Roads to construct a concrete bridge on stone masonry superstructure and a concrete and stone masonry dam on the Blue Ridge Parkway in Virginia. The work included excavating for a small lake behind the dam. Troitino subcontracted to the plaintiffs in the written agreement of December 17, 1956, certain aspects of the work listed in both the prime contract and the subcontract as "unclassified excavation for borrow", "unclassified excavation" and "clearing and grubbing". The unit prices for this work were specified by the parties to both the prime contract and the subcontract; the number of units involved was carefully estimated by the Government in the prime contract. The same estimates were included in the subcontract. The unit prices set forth in the two contracts differed. By using the Government's estimate of the amount of work and the unit prices agreed to between the parties to the subcontract, it appears that the plaintiffs' share of the

whole job would amount to approximately $7,850.00. The plaintiffs' evidence was that while they were performing this work at the lake and dam site, Troitino offered them additional excavation work at the bridge site at a unit price far in excess of that specified in the written subcontract. The plaintiff London's personal testimony to this effect was supported by that of four of his truck drivers and other employees. The defendant's pleadings denied the existence of any agreement or any work performed outside that covered by the written contract but the weakness in the defendant's case is evidenced by a "final statement" which was submitted to the plaintiffs itemizing work done by the plaintiffs to the value of $14,681.06— nearly twice the estimated amount of work set out in the written subcontract. This statement also showed "unclassified excavation for structure" performed at the bridge at a unit rate as high as that claimed by the plaintiffs and allowed by the Master. Furthermore the principal contract between Troitino and the Government showed "unclassified excavation for structure" to be a distinctly different category of work from either "unclassified excavation for borrow" or "unclassified excavation". In the prime contract, the Government allowed Troitino $1.25 per cubic yard for "unclassified excavation", $1.50 for "unclassified excavation for borrow", and $6.00 per cubic yard for "unclassified excavation for structures". The plaintiffs claimed and were allowed by the Master only $2.00 per cubic yard for "unclassified excavation for structures" at the dam and only $3.00 per cubic yard for "unclassified excavation for structures" at the bridge.

■ ■ The essential difference between the parties lies in the quantity of work done claimed by the plaintiffs to have been done at the higher rate under the oral agreements. Troitino claimed that the vast majority of this work was simply "unclassified excavation" or "un-classified excavation for borrow" for which he agreed to pay the plaintiffs 50 cents per cubic yard. The plaintiffs' evidence was to the contrary. The testimony is in conflict in many areas; the record is confusing to say the least. The burden is upon the Appellant to make below and to present here a proper record showing that the evidence compelled a finding in his favor. R. M. Palmer Company v. Luden's, Inc., 236 F.2d 496 (3 Cir. 1956). This has not been done. We must give great deference to the judgment of the Master in such cases as this which turn in large part upon the credibility of witnesses and on involved questions of accountancy. Stonega Coke and Coal Co. v. Price, 106 F.2d 411 (4 Cir. 1939), Cert. den. 308 U.S. 618, 60 S.Ct. 263, 84 L.Ed. 516; United States v. Twin City Power Co., 248 F.2d 108 (4 Cir. 1957).

It is interesting to note that if we accept the Master's findings as to the amount of work done by the plaintiffs at the prices found by him to have been agreed to between the parties and we compare these with the defendant's prime contract prices, we find that the Government would have paid Troitino approximately $34,500.00 for work for which the Master has allowed the plaintiffs $19,066.06. Against this sum, the Master accepted the vast majority of the credits claimed by Troitino in the amount of $16,268.00.

The Appellant asks that we isolate and examine two particular items of the Master's report. This cannot be done as the validity of these findings is inextricably involved in the over-all questions of plaintiffs' credibility and the quality of the work performed by them. They cannot be separated from the long and involved accounting between the parties which goes to make up the final sum which was allowed the plaintiffs.

For these reasons, the judgment of the Court is

Affirmed.