Benjamin Klopp and Marjorie K. C. Klopp v. Commissioner.
Klopp v. Commissioner
Docket No. 73430.
United States Tax Court
T.C. Memo 1960-185; 1960 Tax Ct. Memo LEXIS 105; 19 T.C.M. (CCH) 973; T.C.M. (RIA) 60185; September 9, 1960
*105 In 1955 the United States selected a portion of petitioner's estate for the purpose of establishing a Nike anti-aircraft missile site. Proceedings were commenced for condemnation and, at the same time, negotiations were undertaken looking to the sale of the site to the United States in lieu of condemnation. Upon failure of the parties to agree on the value of the site for purposes of sale, petitioner gave the site together with certain easements over adjacent lands also owned by the petitioner to the United States "so long as [the United States] shall use the * * * premises for the purpose of maintaining and operating * * * facilities for the launching of anti-aircraft missiles." Held, severance damages to adjacent property retained by petitioner are an intrinsic part of the fair market value of the property contributed for the purpose of determining the amount of the charitable deduction for the land and easements so conveyed. Held further, fair market value of the land and easements so conveyed is determined. D. G. Yorkey, Esq., Marine Trust Building, Buffalo, N. Y., and Irving D. Brott, Esq., for the petitioners. John J. Madden, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves a deficiency in Federal income tax for the year 1955 in the amount of $56,828.53. The sole issue is the valuation, for the purpose of deduction as a charitable contribution, of certain property together with certain easements, all of which were the subject of a gift by petitioner to the United States of America for use as an anti-aircraft missile site. In their petition, petitioners claim a higher value than that claimed on their return and hence claim an overpayment. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Benjamin *107 Klopp and Marjorie K. C. Klopp (hereinafter referred to as petitioner), husband and wife, reside in Buffalo and East Aurora, New York. They filed a joint return for the year 1955 with the district director of internal revenue for the district of Buffalo, New York. In 1955 petitioner was the owner in fee simple of approximately 220 acres of improved land located in the Town of Aurora, Erie County, New York, and occupied by petitioner and her husband as a residence. Approximately 36 acres of this property was located on the northerly side of Willardshire Road and the remainder was located on the southerly side of said road. The latter property consisted of three parcels: a westerly portion of 65.8 acres; a central portion of 51.25 acres on which the main dwelling house, garage, stables, and swimming pool were located; and an easterly portion of 63.34 acres on which the overseer's dwelling and the greenhouse were located. The central portion was extensively landscaped. In 1955 the assessed value of parcels was as follows: central, 51.25 acres - land $4,900, improvements, $196,700; easterly, 63.34 acres - land, $4,600, improvements, $6,500; northerly, 36 acres - land, $3,500, improvements, *108 $3,800; westerly, 4.5 and 65.8 acres - land, $6,900, improvements, none. In 1955 the United States of America, operating through the Corps of Engineers, United States Army, decided to acquire sites in the vicinity of the city of Buffalo, New York, and the Niagara frontier for the establishment of bases for Nike anti-aircraft missiles. One of the sites selected for this purpose consisted of a part of the land owned by petitioner in the Town of Aurora, Erie County, New York. Proceedings were begun in the United States District Court, Western District of New York, for condemnation of the site belonging to petitioner, and negotiations were undertaken looking to sale of such site to the United States in lieu of condemnation. For these purposes, the Corps of Engineers had the site appraised by Robert W. Hopkins, a real estate appraiser. The appraisal contemplated the condemnation or sale of 19.84 acres of the property of petitioner located in the northwest sector of said property, and the granting of safety, line of sight, and sewer easements. Their values, as determined by Robert W. Hopkins, are as follows: Taking
Severance
Total
19.84 Acres (Tract A-105)
$7,530
$55,377
$62,907
Safety Area Easement (Tract A-105E1)
675
6,000
6,675
Sewer Easement (Tract A-105E2)
100
100
Line of Sight Easement (Tract A-105E3)
100
100
Totals
$8,405
$61,377
$69,782
*109 The Hopkins appraisal was not disclosed in its entirety to petitioner or her counsel at the time it was made. However, under date of December 1, 1955, the Corps of Engineers, United States Army, wrote a letter to petitioner's counsel, stating in part: Please be further advised that this office is not authorized, under controlling regulations, to furnish you with a copy of the appraisal report covering the referenced tracts. However, this office has no objection to the release of the dollar amounts constituting the fair appraised value of the property. These figures were originally furnished by a representative of this office to your client, Mrs. Klopp during the preliminary negotiations for acquisition of these premises. The fair appraised value of the subject tracts is as follows: Tract A-105
$62,907.00
Tract A-105E1
6,675.00
Tract A-105E2
100.00
Tract A-105E3
100.00
It is hoped that this information will serve your purpose. Petitioner and the United States were unable to agree upon the value of the site for the purposes of sale. Petitioner therefore decided to make a gift of the site to the United States. By deed dated December 9, 1955, petitioner *110 conveyed to the United States 19.84 acres of land, more or less, together with certain rights of way, in the Town of Aurora, Erie County, New York, subject to the following conditions: TO HAVE AND TO HOLD the premises herein granted unto the [United States] and its assigns, so long as the [United States] shall use the said premises for the purpose of maintaining and operating thereon the necessary installations, equipment, housing and other supporting facilities for the launching of anti-aircraft missiles. By related deed also dated December 9, 1955, petitioner conveyed to the United States certain easements in adjacent lands also owned by petitioner. The said deed granted the following easements: (1) A SAFETY AREA, in, upon, over, under and across the following described parcel of land: * * *
THE easement and rights hereby granted consist of the right to prohibit human habitation; the right to remove buildings presently or hereafter being used for human habitation; the right to prohibit gatherings of more than twenty-five (25) persons; the right to post signs indicating the nature and extent of the GOVERNMENT'S control and the right of ingress and egress over and *111 across the above described property for the purpose of exercising the other rights set forth herein. (2) A RIGHT OF WAY, in, upon over, under and across the following described parcel of land: * * *
THE easement and rights hereby granted consist of the right to construct, maintain, repair, operate, patrol, replace and/or remove a sewer line in, upon, over and across the within described parcel of land, together with the right to trim, cut, fell and remove therefrom all trees and underbrush and obstructions and any other vegetation, structures or obstacles within the limits of the right of way, and for such distance beyond said limits and adjacent thereto as is necessary to provide adequate clearance and to eliminate interference with or hazards to the structures or utilities placed or constructed on, over, across or under said land within the limits of said easement, and (3) A LINE-OF-SIGHT, in, upon, under, over and across the following described parcel of land, with right of ingress and egress thereon: * * *
THE easement and rights hereby granted for the LINE-OF-SIGHT consist of the following rights over so much of the within described lands as lie immediately below *112 the hereinafter described LINE-OF-SIGHT clearance surface: (a) The continuing perpetual right to cut to ground level and remove trees, bushes, shrubs, or any other perennial growth or undergrowth infringing upon or extending into or above the LINE-OF-SIGHT clearance surface hereinafter described, and (b) The right to remove, raze, or destroy those portions of buildings, other structures, and land infringing upon or extending into or above the LINE-OF-SIGHT clearance surface hereinafter described, and (c) The right to prohibit the future construction of buildings or other structures infringing upon or extending into or above the LINE-OF-SIGHT clearance surface hereinafter described: * * *
All of the foregoing easements were subject to the following condition: TO HAVE AND TO HOLD the above described easements and rights unto the GOVERNMENT, and its assigns, so long as the GOVERNMENT shall use the above described premises for the purpose of maintaining and operating therein or thereon the necessary installations, equipment, housing and other supporting facilities for the launching of anti-aircraft missiles. The deeds further provided that the Government should have a *113 period of six months after it had ceased to use the premises for the said purposes within which to dispose of, by sale or abandonment, any improvements which should have been erected or placed in and upon said premises. The said deeds, duly executed and acknowledged by petitioner, were delivered to the United States, acting through the Corps of Engineers, United States Army, in December, 1955, and were received by the Corps of Engineers at its New York office on or before December 22, 1955. The said deeds were recorded in the Office of the Clerk of Erie County, New York, on February 28, 1956. The said conveyances by petitioner to the United States were made without consideration to petitioner and as a gift or contribution to the United States. The said conveyances were made for exclusively public purposes, to wit, for assistance in defense of the United States against possible air attack. In their Federal income tax return for the year 1955 petitioners claimed a deduction for the value of the lands and easements so conveyed by petitioner to the United States in the total amount of $69,792. The amount of this deduction was based on the appraisal made by Robert W. Hopkins, as it *114 was reported to petitioner's counsel by the Corps of Engineers. Following the said conveyances by the petitioner, the United States placed the said site into use as a Nike anti-aircraft missile site. George E. Matthews, a real estate appraiser, appraised petitioner's property in 1958 retrospectively as of 1955. He submitted the results of his appraisal to petitioner in a letter dated February 5, 1958. In arriving at the value of the entire property ($381,250), Matthews ascertained the original cost of the improvements, added an appreciation factor, deducted depreciation and added thereto the value of the land. Matthews appraised the fair market value of the entire property at $335,000. Matthews appraised the damages to the western portion of petitioner's property resulting from a taking of the 19.84 acres as aggregating $34,373, as follows: Damage
Dam-
Value
Factor
ages
19.84 Acres
$ 9,810
100%
$ 9,810
Safety Area Easement
9,768
90%
8,791
Sewer Easement
92
50%
46
Line-of-Sight Easement
540
90%
486
Other parcels within
the western portion,
including a log cabin
in the Safety Area
(summarized)
24,254
15,240
Totals
$44,464
$34,373
*115 By deducting $44,464, representing the entire value of the western portion of petitioner's property, from $335,000, representing the fair market value of the entire property owned by petitioner, Matthews arrived at a figure of $290,536 for the value of the balance of petitioner's property. Applying to the latter amount a severance damage factor of 20 per cent, Matthews arrived at a figure of $58,107 as representing severance damages to the remainder of petitioner's property (other than the western portion). Matthews appraised the total value of a taking at $92,480 (damages to the western portion of $34,373, plus damages to the remainder of $58,107). The fair market value of the property given by petitioner to the United States in 1955 was $68,961.35. Opinion In 1955 the United States selected a portion of petitioner's estate for the purpose of establishing a Nike anti-aircraft missile site. Proceedings were commenced for condemnation and, at the same time, negotiations were undertaken looking to the sale of the site to the United States in lieu of condemnation. Upon failure of the parties to agree on the value of the site for purposes of sale, petitioner gave the site, together *116 with certain easements over adjacent lands also owned by the petitioner, to the United States "so long as [the United States] shall use the * * * premises for the purpose of maintaining and operating * * * facilities for the launching of anti-aircraft missiles." On their joint return for the year 1955 petitioners claimed a charitable deduction under section 170, Internal Revenue Code of 1954, [1] for the value of the land and easements so conveyed in the total amount of $69,792. In their petition, petitioners claim that the value is greater (on brief such greater value is represented as $70,972, petitioners' maximum charitable deduction) and hence claim an overpayment. Respondent determined that the fair market value of the property conveyed was $1,200 and allowed petitioners a deduction to that extent. *117 The parties have stipulated, and we agree, that the conveyance was made as a gift or contribution to the United States exclusively for public purposes. The question of deductibility under section 170(c)(1) is thus narrowed to one of evaluation. The primary question which confronts us is whether so-called "severance damages" to adjoining property retained by the donor are includible for purposes of ascertaining the value of that portion of petitioner's property which she contributed to the United States. Respondent seeks to apply the separate parcel rule as it is set forth in Sharp v. United States, 191 U.S. 341. In that case severance damages to adjoining but separate, independent and distinct parcels of land were not allowed where only a portion of one parcel was condemned. Here, however, petitioner's estate is a unitary holding and where "several contiguous lots or tracts in reality constitute an entire parcel used for one general purpose by the common owner, the inquiry should embrace all injuries which will be caused to the entire body of land." West Virginia Pulp & Paper Co. v. United States, 200 F. 2d 100, 104. *118 Under the applicable regulations "If the contribution or gift is other than money, the basis for the calculation of the amount thereof shall be the fair market value of the property at the time of contribution or gift." Regs. 118, sec. 39.23(o)-1(g), applicable to the taxable year in issue under T.D. 6091, par. 1, 1954-2 C.B. 47. Fair market value is definable as what a willing buyer would pay in cash to a willing seller, both being informed as to relevant facts and neither being under any compulsion to buy or sell. United States v. Miller, 317 U.S. 369. In condemnation proceedings the value of the property condemned is determined by either "value of the part taken plus damage to the remainder" or "value of the whole before the taking less value of the remainder after the taking." These methods of evaluation are used almost interchangeably. It would appear that they lead to substantially equivalent results. Both methods are directed toward the end of ascertaining an adequate *119 and just compensation. The standard of measure in determining such adequate and just compensation is fair market value. Included as an intrinsic part of the fair market value of the property condemned are so-called "severance damages" to that portion of the property which was not taken. See United States v. Miller, supra; United States v. Grizzard, 219 U.S. 180; Baetjer v. United States, 143 F. 2d 391, certiorari denied 323 U.S. 772. See also Lapham v. United States, 178 F. 2d 994, a case which involved an attempt by taxpayer to apportion a lump sum received from a sale in lieu of condemnation. The following statement of the Second Circuit Court of Appeals, at page 996, is especially relevant to the nature of severance damages as a part of the fair market value of the property transferred: "Whenever any seller of a part of a parcel of land agrees upon a price there may be, and no doubt often is, consideration given to the effect upon the value of the remaining portion because of the changed situation resulting from the *120 sale and such consideration may be, and no doubt often is, reflected in the price. But calling a part of that price 'severance damages' does not alter the fact that the land sold brought the price in part at least because of its location and relationship to the land retained. In other words, what appellant would consider to be 'severance damages' to the land retained may just as well be treated as an attribute of the land sold, i.e., what might well be called its 'protection value' to the remaining land. It makes no difference whether the sale is induced in part at least by the threat of condemnation proceedings or the transaction is an arm's length one between private parties. The fact remains that a sale of property is made at a price the parties agree upon as the amount which one, all things considered, is willing to pay and which, all things considered, the other is willing to accept, for the property actually transferred. * * *" It is true that the instant case involves a gift rather than a sale. But the test of the willing buyer and the willing seller is applicable to both gift and sale conveyances. Fair market value is a constant, not a variable; it does not fluctuate according *121 to whether condemnation, sale, or gift is involved. It does not vary according to whether the taxpayer is seeking a charitable deduction for property contributed or an adequate and just compensation for property condemned. In Great Northern Ry. v. Weeks, 297 U.S. 135, 139, which involved the question of the value of the railroad properties of the petitioner located in North Dakota for state tax purposes, the Supreme Court stated: "The full and true value of the property is the amount that the owner would be entitled to receive as just compensation upon a taking of that property by the State or the United States in the exertion of the power of eminent domain. That value is the equivalent of the property, in money paid at the time of the taking. * * * The principles governing the ascertainment of value for the purposes of taxation, are the same as those that control in condemnation cases, confiscation cases and generally in controversies involving the ascertainment of just compensation. * * *" We hold that, in determining the fair market value of that portion of petitioner's *122 property which was contributed under threat of condemnation to the United States, so-called "severance damages" to adjacent property retained by petitioner are an intrinsic and integral part of the fair market value of the property contributed. In this connection, it is to be noted that in its letter of December 1, 1955 to petitioner's counsel, the Corps of Engineers, United States Army, included the so-called "severance damages" in "the fair appraisal value of the subject tract." We now pass to the problem of ascertaining the fair market value of the portion of petitioner's property which was given to the United States. Hopkins, in his report to the Corps of Engineers, appraised the value of the "taking" at $8,405, severance damages at $61,377, and the total value at $69,782. This appraisal was made in contemplation of a fee taking by either condemnation or sale. The appraisal by Matthews was made in greater detail and was also made in expectation of a fee taking by condemnation or sale. Matthews' appraisal was arrived at by computing the value of the property given and the value of the property over which the easements were granted and applying thereto certain rates of depreciation, *123 thereby resulting in an amount representing total damages caused by the respective takings. Thus, under Matthews' appraisal a fee taking would result in damages to the westerly 65.66 acres of land of $34,373 and in damages to the remaining portion of petitioner's estate of $58,107, or total damages aggregating $92,480. The mean between the estimates of these two qualified real estate appraisers is $81,131. Other than the stipulated appraisal of Hopkins, respondent offered no independent expert witness of his own with respect to the fair market value of the fee of the properties involved and no testimony or other evidence whatever as to the amount by which the fee value should be reduced in view of the possible abandonment of the Nike site by the United States and the consequent reversion of the properties to petitioner. Mitchell testified the determinable fee was worth less than the fee and expressed the opinion a ten to twenty per cent reduction of the fee value would represent a fair value for the determinable fee. In our opinion, considering the rapid scientific advancements being made in the use of rockets, intercontinental ballistic missiles and space satellites, and their *124 possible launching from the land, from under the water and in the air, and the constant changes being made in military requirements as the result of such advancements, the abandonment of the Nike site in question is not so improbable as to justify its being ignored. Cf. J. T. Fargason, 21 B.T.A. 1032. We are of the opinion, and so hold, that the fair market value of the properties, including the easements, conveyed to the United States by petitioner, is $68,961.35, and that petitioner is entitled to a charitable deduction in that amount for the year 1955. Decision will be entered under Rule 50. Footnotes
1. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction. - (1) General Rule. - There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. * * *
(c) Charitable Contribution Defined. - For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of - (1) A State, a Territory, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes. * * *↩