**BAETJER et al. v. UNITED STATES.**

No. 3933.

Circuit Court of Appeals, First Circuit.

June 26, 1944.

392

E. T. Fiddler, of San Juan, P. R., for appellants.

Vernon L. Wilkinson, Atty., Department of Justice, of Washington, D. C., Norman M. Littell, Asst. Atty. Gen., and Joseph F. McPherson, Sp. Asst. to the Atty. Gen., of San Juan, Puerto Rico, for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for Puerto Rico awarding the appellants, who are the trustees of Eastern Sugar Associates, a trust, $361,500 as compensation for two tracts of land on the island of

Vieques [1] condemned and taken possession of by the United States for war purposes under 40 U.S.C.A. § 258a.

The land condemned consists of two non-contiguous parcels, denominated in the petition as "A" and "B", aggregating 7,936.6 acres. Parcel "B", known as "Cabeza del Este", consisting of about 1700 acres, constitutes the eastern tip of the island of Vieques and includes all lands owned by the appellants on that part of the island. Parcel "A", consisting of about 6,300 acres, lies in the central part of the island and is five or six miles distant from parcel "B". Parcel "A" in turn formed the eastern part of a larger tract, some 8,800 acres, owned by the appellants, so that, after the taking, there remained in the appellants' ownership in the central part of the island approximately 2,500 acres. On this latter 2,500 acre tract are located the docks, buildings and railroad which the appellants had formerly used in operating their entire property on the island and still use in operating the part that remains.

The appellants in their answer alleged that the lands condemned and taken constituted part of "a single integrated property" known as "Eastern Sugar Estates"; that this property consisted of approximately 30,000 acres of land, roughly two-thirds of which lay on the island of Puerto Rico itself and the remainder on the island of Vieques; that upon it "are located four sugar mills, an extensive railway system, docks, warehouses and other dependencies"; that it is "devoted as an integrated whole" to the raising of sugar cane, pasture for raising and feeding livestock for use in the business of growing sugar cane and transporting it to the mills, and to the processing of cane into raw sugar; and that "the part of said Eastern Sugar Estates located in the island of Vieques including the area taken in these proceedings is devoted to the raising of sugar cane and the raising and maintaining of cattle for the needs of the enterprise as a whole"— the proportion of the lands devoted to sugar cane and to cattle, respectively, varying from year to year depending upon conditions and the requirements of the business. They then alleged that the amount deposited in court as estimated just compensation ($235,459) was wholly inadequate to compensate them for the land condemned and taken.

As the answer just summarized indicates, the principal question raised on this appeal is the question of severance damages. At the trial below the appellants took the position that their entire holdings, including those on the island of Puerto Rico as well as those remaining in their ownership on the island of Vieques, had been depreciated in value by the severance of the property condemned and that they were entitled to compensation for this depreciation. Counsel for the United States, on the other hand, contended that no damages for severance can ever be allowed unless the property taken is physically contiguous to the property of the owner remaining after the taking, that is, that as a matter of law severance damages may be awarded only for the taking of the 6,300 acre tract from the larger 8,800 acre tract of which it had formed a part. After listening to arguments on the question whether the appellants were legally entitled to severance damages for properties not physically contiguous to those taken, the court below ruled that it would hear evidence tending to prove damages both to other properties on Vieques and to properties on the main island of Puerto Rico itself, but would later entertain a motion to strike. Such evidence was thereupon admitted and counsel for the United States, having reserved the right to cross examine thereon, moved at the close of the appellants' evidence in chief that it be stricken. The court below granted this motion ruling "that the lands of the defendant located in Puerto Rico proper have not been severed in the legal sense from the lands taken by the United States in this case. Consequently, all the evidence adduced by the defendant purporting to show that the lands of the defendant located in Puerto Rico proper have been damaged by virtue of the taking in this case is stricken." With respect to the lands of the defendant located in Vieques, the court ruled "that the taking of Cabeza del Este did not affect any of the remaining lands of the defendant in Vieques which were not taken." The court then ruled that it was "still not in a position to determine" whether the lands remaining in the defendants' ownership in the central part of the island had

---

[1] This island lies about ten miles to the east of the south-easterly corner of the island of Puerto Rico. The appellants' dock on Vieques is seventeen nautical miles distant from their docking facilities on Puerto Rico proper.

been "damaged in a compensable manner," by the taking of the lands adjacent thereto and consequently reserved its ruling on this question.

 The appellants admit that the evidence on this reserved question of damages is in conflict and that in consequence the court below could have decided it either way, but they say that it was error for the court below to have neglected to make specific findings and rulings in accordance with Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c and that its general finding on the subject of damages left the question unanswered. We do not agree.

In the first place specific findings and rulings, although helpful to us on appeal, do not have to be made in cases of this nature. Rule 81 (a) (7) provides: "In proceedings for condemnation of property under the power of eminent domain, these rules govern appeals but are not otherwise applicable." In the second place the finding made "That just compensation for said property condemned amounts to $361,500 which said amount includes all damages, past, present and future depreciation, if any there might be, to the remainder of the tract from which said parcel A of the lands condemned was taken" indicates that the court below had the question reserved in mind when awarding compensation. It, and the judgment which is worded in much the same terms, are unhappily phrased in that neither indicates whether any severance damages at all were given and if given how much was awarded therefor. This, however, is not a fatal defect. It is enough that it clearly appears that the point was not overlooked. We do not need to know how it was decided any more than we would need to know how a jury might have decided the question had the case been tried before such a tribunal under instructions permitting a general verdict.

We come now to the appellants' contention that the court below erred in striking their evidence which they say tended to show that their entire holdings on Vieques and Puerto Rico, although not contiguous, constituted a single unit made up of interdependent, related parts, and that the taking of the parts on Vieques reduced the value of the parts remaining to them on the main island of Puerto Rico.

 In United States v. Miller, 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336, 147 A.L.R. 55, the Supreme Court, citing cases, stated the basic rule with respect to severance damages as follows: "If only a portion of a single tract is taken, the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. Such damage is often, though somewhat loosely, spoken of as severance damage." But "As respects other property of the owner consisting of separate tracts adjoining that affected by the taking, the Constitution has never been construed as requiring payment of consequential damages." The first question before us here, therefore, and the basic one in all severance damage cases, is what constitutes a "single" tract as distinguished from "separate" ones. The answer does not depend upon artificial things like boundaries between tracts as established in deeds in the owner's chain of title, (see United States v. Powelson, 4 Cir., 118 F.2d 79, 86, 87, reversed on other grounds, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390), nor does it depend necessarily upon whether the owner acquired his land in one transaction or even at one time. Sharpe v. United States, 3 Cir., 112 F. 893, 57 L.R.A. 932.[2] Neither does it wholly de-

---

[2] The question in the Sharpe case was not the question before us here. The question there was not one of damages for the taking of land, but one of damages resulting from the use to be made of land after it had been taken. But this does not impair the value of the case as an authority for us because in both situations the question raised is whether the land is a "separate" tract or part of a "single" one. As the Supreme Court in its opinion in the Sharp case (191 U.S. 341, 354, 24 S.Ct. 114, 117, 48 L.Ed. 211) pointed out: "If the remaining land had been part of the same tract which the government seeks to condemn, then the damage to the re-

maining portion of the tract taken, arising from the probable use thereof by the government, would be a proper subject of award in these condemnation proceedings. But the government takes the whole of one tract. If the evidence were such as to leave it a matter of some doubt whether the land owned by the plaintiff in error were one tract or separated into three separate and distinct tracts, it would be proper to leave that question to the jury, with the instruction that if they found that it was one tract, then damages might be awarded, and refused if they were separate and independent tracts."

pend upon whether holdings are physically contiguous. Contiguous tracts may be "separate" ones if used separately (Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211) and tracts physically separated from one another may constitute a "single" tract if put to an integrated unitary use or even if the possibility of their being so combined in use "in the reasonably near future" (Powelson v. United States, 319 U.S. 266, 276, 63 S.Ct. 1047, 1053, 87 L.Ed. 1390) "is reasonably sufficient to affect market value." McCandless v. United States, 298 U.S. 342, 345, 56 S.Ct. 764, 765, 80 L.Ed. 1205. See also Stephenson Brick Co. v. United States, 5 Cir., 110 F.2d 360, 361; Grand River Dam Authority v. Thompson, 10 Cir., 118 F.2d 242, 244, 245; 18 Am.Jur., Eminent Domain, § 270.

The Circuit Court of Appeals, Third Circuit, in the Sharpe case, (112 F. at page 896) in language approved by the Supreme Court on writ of error (191 U.S. 341, 354, 24 S.Ct. 114, 48 S.Ct. 211), stated the rule as follows:

"It is not denied that in rendering the 'just compensation' secured by the constitution of the United States to the citizen whose property is taken for public uses it is right and proper to include the damages in the shape of deterioration in value which will result to the residue of the tract from the occupation of the part so taken. In applying this rule, however, regard is had to the integrity of the tract as a unitary holding by the owner. The holding from which a part is taken for public uses must be of such a character as that its integrity as an individual tract shall have been destroyed by the taking. Depreciation in the value of the residue of such a tract may properly be considered as allowable damages in adjusting the compensation to be given to the owner for the land taken. It is often difficult, when part of a tract is taken, to determine what is a distinct and independent tract; but the character of the holding, and the distinction between a residue of a tract whose integrity is destroyed by the taking and what are merely other parcels or holdings of the same owner, must be kept in mind in the practical application of the requirement to render just compensation for property taken for public uses. How it is applied must largely depend upon the facts of the particular case and the sound discretion of the court."

▌ Integrated use, not physical contiguity, therefore, is the test. Physical contiguity is important, however, in that it frequently has great bearing on the question of unity of use. Tracts physically separated from one another frequently, but we cannot say always, are not and cannot be operated as a unit, and the greater the distance between them the less is the possibility of unitary operation, but separation still remains an evidentiary, not an operative fact, that is, a subsidiary fact bearing upon but not necessarily determinative of the ultimate fact upon the answer to which the question at issue hinges.[3]

▌ The court below therefore erred in ruling that the appellants' lands on Puerto Rico had not been severed in the legal sense from their lands on Vieques. Their evidence should have been considered in order to determine as a matter of fact whether, in spite of lack of physical contiguity, their holdings by reason of the uses to which they were being put, or would probably be put in the reasonably near future, constituted a single, integrated, unitary tract. But it does not follow that the appellants are necessarily entitled to severance damages if this question is answered in their favor.

▌ The "just compensation" guaranteed by the Fifth Amendment "is for the property, and not to the owner" (Monongahela Navigation Co. v. United States, 148 U.S. 312, 326, 13 S.Ct. 622, 626, 37 L.Ed. 463), that is to say, "the sovereign must pay only for what it takes, not for opportunities which the owner may lose" (United States v. Powelson, 319 U.S. 266, 282, 63 S.Ct. 1047, 1056, 87 L.Ed. 1390),

---

[3] "Of course actual physical separation by an intervening space between two parcels belonging to the same owner is ordinarily ground for holding that the parcels are to be treated as independent of each other, but it is not necessarily a conclusive test. If the land is actually occupied or in use the unity of the use is the chief criterion. When two parcels are physically distinct there must be such a connection or relation of adaptation, convenience and actual and permanent use as to make the enjoyment of one reasonably necessary to the enjoyment of the other in the most advantageous manner in the business for which it is used, to constitute a single parcel within the meaning of the rule." (2 Nichols on Eminent Domain, (2d ed.) p. 740.)

so that, as a result, "There are numerous business losses which result from condemnation of properties ,but which are not compensable under the Fifth Amendment." Id. 319 U.S. at page 281, 63 S.Ct. at page 1055, 87 L.Ed. 1390; Mitchell v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L.Ed. 644, and cases cited. Under the constitution a land-owner is entitled to just compensation only for land taken, or for land remaining in his ownership but damaged by a taking of other, lands, all of which together had formerly constituted a unitary holding, and the amount of his compensation is to be measured by "fair market value"—"what a willing buyer would pay in cash to a willing seller." United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336, 147 A.L.R. 55. So, given a single tract under the test of unitary use and a taking of part of it, there may or there may not be severance damages depending upon whether the taking of the part operates to reduce the market value of what remains. The landowner's compensation is the difference between the fair market value of the entire unitary tract before the taking and the fair market value of the part of the tract remaining thereafter.

■ With these general considerations in mind we turn to the evidence on damages introduced by the appellants at the trial below, but stricken at the end of their evidence in chief. This evidence was to the effect that in the past the appellants had raised sugar cane on the lands on Vieques which the government has taken; that they had transported this cane to their mills on the main island of Puerto Rico for processing into sugar; and that, there being no other lands economically available upon which they could raise cane to keep their mills running at full capacity, they had suffered a loss to the extent of $270,000 "in value of excess equipment." The meaning of the phrase just quoted is not altogether clear. If it means that after the taking the appellants' mills had an uneconomic over-capacity so that they could not be operated by the appellants as efficiently and therefore as profitably as before the taking, then the stricken evidence shows only a loss to business which resulted as an unintended incident of the taking and so a loss not compensable under the doctrine of Mitchell v. United States, supra. On the other hand, if it means, and there is other evidence tending to show that this is what the witness who used the phrase meant by it, that the over-capacity of the mills with respect to cane lands available to supply them has depreciated their value on the market to the extent of $270,000, then the evidence would tend to show a compensable loss. In short the stricken evidence would indicate a compensable loss only if it means that after the taking the appellants' mills had an uneconomic over-capacity so that they could not be operated by anyone as efficiently and therefore as profitably as before the taking, this being a matter which a hypothetical willing buyer would consider in determining what he would pay for the property. The case must be remanded for the court below to consider the appellants' evidence, and the evidence which the government says it can introduce to contradict it, in order to determine whether or not the appellants have suffered a compensable loss, and, if they have, its extent.

The appellants' next contention is that the court below erred in refusing to value the lands condemned in the light of its special and higher value to the appellants by reason of its combination with their other holdings. That is, the appellants contend that the most valuable use of the land taken was in combination with the balance of their property and that they are entitled to have the land valued on the basis of its most valuable use.

■ The rule is well established that market "value may reflect not only the use to which the property is presently devoted but also that use to which it may be readily converted." United States v. Powelson, 319 U.S. 266, 275, 63 S.Ct. 1047, 1053, 87 L.Ed. 1390; Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206. But it does not follow from this that its value to the condemnee, even if more valuable to him than to anyone else, is the criterion. The test of market value is objective. It is what a hypothetical willing seller would part with the land for and what an equally hypothetical buyer would give for it. Value due to the strategic location of land is important, but important only in so far as that factor would influence the hypothetical bargainers whose behavior provides the test of value, and this, we think, is all the Supreme Court meant when it followed the above quotation from the Powelson case with the statement that "value may be determined in

light of the special or higher·use of the land when combined with other parcels; it need not be measured merely by the use to which the land is or can be put as a separate tract." We see no conflict between this statement and the statement in the Miller case, (317 U.S. at page 375, 63 S. Ct. at page 280, 87 L.Ed. 336, 147 A.L.R. 55) to the effect that the fact that an owner "may not want to part with his land because of its special adaptability to his own use * * * must be disregarded by the fact finding body in arriving at 'fair' market value." This latter quotation seems to us applicable to the situation presented by the facts in the case at bar and determinative of this contention of the appellants. See United States v. Honolulu Plantation Co., 9 Cir., 122 F. 581, 585.

Next the appellants contend that the court below erred in admitting certain deeds into evidence on the issue of the value of the lands taken. The appellants suggest but do not press here the question whether the recitations of consideration in the deeds are accurate. However, since they did not raise the point below when it could have been covered by evidence it is not before us. On their faces the deeds show transactions, apparently at arm's length, in lands on Vieques in the vicinity of those taken at about the time of the taking. Clearly such transactions have a tendency to show fair market value. In fact, in the absence of recent transactions of a like nature involving the land taken itself, they are the best evidence of market value. What comparable land changes hands for on the market at about the time of taking is usually the best evidence of market value available. In the absence of such evidence a determination of value becomes at best only a guess by informed persons. United States v. Miller, 317 U.S. 369, 375, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

The questions of whether such transactions are near enough in time, or involve substantially similar lands, or significant amounts of land are all questions of the remoteness of the evidence offered and in consequence are for the trial court. Here we cannot say that the court below abused its discretion. If the sales were not what they appear to have been, transactions at arm's length, that is a matter for cross examination or rebuttal evidence. Only sales on foreclosure and similar forced transactions not on the open market are without probative force as a matter of law. The motivation behind other transactions can be shown, but only as affecting weight, not admissibility.

What has just been said goes far to dispose of the appellants' objection to the ruling of the court permitting a naval officer to testify as an expert on value, the only basis for his standing as such being his familiarity with sales of land on Vieques at about the time of the taking. Having made a study of the question of the value of the lands taken it was for the court below to say whether he was qualified to assist it by expressions of opinion on the subject.

Other questions raised by the appellants on this appeal have been considered but in so far as they are not covered by what has been said do not call for discussion since they are not likely to arise at another trial.

The judgment of the District Court is set aside and the case remanded to that court for further proceedings not inconsistent with this opinion.