THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellee, *v.* LORENZO ANADÓN Y PONTÓN, ET AL., Defendants and Appellants the former two.

No. 9873. Argued March 1, 1949.—Decided April 6, 1949.

*Fernando Zapater* for appellants. *Vicente Géigel Polanco (Luis Negrón Fernández,* former *Attorney General,* on the brief), and *F. Navarro Mendía* and *Eduardo Negrón Rodríguez, Assistant Attorneys General,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The People of Puerto Rico, represented by the Commissioner of Education, instituted condemnation proceedings in the District Court of Ponce against Lorenzo Anadón and Pontón, Isabel Ramírez, Federal Land Bank and Land Bank Commissioner in order to take ten acres of land of a property of two hundred and ninety-one acres belonging to defendants, Lorenzo Anadón and Isabel Ramírez. It deposited in court the amount of $7,000 as its just and fair value. The plaintiff was vested with title over the condemned parcel of land and the defendants [1] answered that the value of said

---

[1] The codefendants Federal Land Bank of Baltimore, etc., appeared and consented to the condemnation provided the money paid be delivered in its entirety to the Federal Land Bank of Baltimore in payment of a mortgage credit in their favor.

tract was $15,000 for the land and $49,640 for the crops, that is, a total amount of $64,640.[2] The case was tried and the court rendered judgment declaring that the $7,000 deposited by the plaintiff was the just and fair market value of the tract taken by condemnation.

Feeling aggrieved, the defendants appealed and allege that the lower court committed five errors, all of which are connected one way or another with the erroneous weighing of the evidence, the last charge being that the court acted with passion, prejudice and partiality.

 The appellants maintain that the court erred in holding that no damages were caused to the main property of two hundred ninety-one acres by the segregation of the condemned tract of ten acres and in not awarding severance damages pursuant to our ruling in People v. Garcia, 66 P.R.R. 478.

In a careful and elaborate opinion, the lower court, after taking a view of the condemned tract, stated as to this particular point, the following:

"In view of the whole evidence in this case, we are of the opinion that the owner has not proved that the principal estate suffered any severance damages by the taking of the condemned tract of land. The latter has been recently devoted to the cultivation of crops different from those of the main property; it is separated from the remainder of the property by fences and there is no relation whatsoever between the crops of the main estate and those of the condemned tract. The view taken also showed that no services whatever of the main estate derives from the condemned tract. Thus we see that the main entrance road and the secondary roads of the property lie without the tract taken. It is true that the drawings, exhibits 2, 3 and 4 of the defendants, seem to indicate that after taking the piece of land a narrow strip remains in the main estate between the southeastern corner of the tract and the southern boundary which is a brook in the main estate. This inconvenience, how-

---

[2] During the hearing of the case the defendants amended the answer reducing the value of the crops to $15,950, the total claim being therefore $30,950.

ever, is rather apparent than real, since as we already said, none of the roads or services of the main estate is used in the condemned tract of land, nor can it be used as entrance or exit roads to the remaining property because the eastern boundary of the tract of land runs across the top of a hill rendering such a tract practically inaccessible to the rest of the property by said eastern boundary. The only communication between the piece of land taken and the remainder of the whole estate is across a small path for the exclusive use of the tract, which runs from north to south across the piece of land according to the drawing, exhibit 1, of defendants."

We have examined the evidence offered by the appellant and, in our opinion, the lower court did not err in deciding that the damages that might have been caused to the principal property by the segregation of the condemned tract of land were not proved. This is a question that can not be left to inferences or presumptions. It was incumbent on the appellants to prove the just value of the property before the taking of the ten acres and the just value of the part remaining. The case of *People* v. *Garcia, supra,* invoked by the appellants, does not favor them as it is held therein, on page 486, that the court should have taken a view in order to determine certain injuries alleged by the defendants and

". . . considering the prejudices as a whole and in connection with the rest of the evidence, to determine the damage sustained *which should be the difference between the market value of the house before and after the construction* of the viaduct." (Italics ours.)

By analogy the same principle is applicable to this case. In *Baetjer* v. *United States,* 143 F. 2d 391, 396, (C.C.A. 1st, 1944), which was appealed from the United States District Court for Puerto Rico, the question involved herein was precisely decided as follows:

". . . So, given a single tract under the test of unitary use and a taking of part of it, there may or there may not be severance damages depending upon whether the taking of the part operates to reduce the market value of what remains. The

landowner's compensation is the difference between the fair market value of the entire unitary tract before the taking and the fair market value of the part of the tract remaining thereafter."

In 2 Nichols, The Law of Eminent Domain (2nd ed.) § 237, p. 723, cited by the appellee, the rule as to the required evidence to prove the damages is set forth thus:

"The measure of compensation when part of a tract is taken is the difference between the fair market value of the whole before the taking and the fair market value of what remains. The question for the tribunal which makes the award is merely how much less is the tract as a whole worth with a piece taken out of it or an easement established over or through it than it was worth before the dismemberment. It necessarily follows that, in determining the value of the property after the taking for the purpose of estimating the amount of depreciation, the tribunal which assesses the damages is bound to take into consideration every element which a purchaser willing but not obliged to buy would consider."

And § 237, page 729, of the above cited text, reads:

"The burden of proof is upon the owner to show that the taking of part of his property will cause damage to the remainder, and unless he shows such damage by affirmative evidence, furnishing a basis from which a reasonable and proper estimate of the amount thereof can be made, his compensation will be limited to the value of the land taken; and it is of course competent for the condemning party to rebut such evidence."

See 2 Lewis, Law of Eminent Domain (3rd. ed.) § 686, page 1176; 18 Am. Jur., § 342, page 985 and cases cited therein.

It is true that the witnesses for the appellants testified that the remainder of the property depreciated in value due to the taking of the parcel of ten acres. Nevertheless, this testimony did not prove anything as to the amount, if any, of the severance damages caused. We should not forget that these damages have nothing to do with the just value in itself of the condemned parcel of land to which appellants are

entitled as compensation. They are part of the whole compensation but they should be proved independently of the just value of the piece of land taken.

The lower court did not err in not granting a greater compensation because it did not take into account the severance damages, as they were not proved.

■■ The other assignments refer to the alleged error committed by the court in fixing the amount of $7,000 as the just and fair value of the condemned tract of ten acres and that in so doing it acted with passion, prejudice and partiality.

The expert testimony was contradictory and this is natural because as we said in *People* v. *Garcia, supra,* "Experience shows that among the most competent witnesses there is frequently a wide diversity of opinion as to the value of the same property." But in the case at bar it appears from the pleadings as well as the evidence for the appellants that the claim is excessive. First they alleged in their answer that the ten acres were worth $15,000 and the crops $49,640, that is, a total amount of $64,640. Subsequently they amended their answer by reducing the value of the crops to $15,950 and claiming a total of $30,950. What does their expert testimony show? According to the opinion of the lower court in referring to the testimony of Carlos Archeval, and expert witness, it showed the following:

"At the request of the defendant owners he went to the parcel of land taken and made a study of its soils and crops, preparing the aforesaid drawing, exhibit No. 1 of defendants. As it appears from said drawing the witness divided the land taken into four parcels: one of 4.84 acres of coffee and fruit trees; another of 1.52 acres of sugar cane; another of 1.60 acres of grass; and another of 2.04 acres of sugar cane. All the land, however, according to the witness, is suitable for sugar cane, such being the best use to which the land may be devoted. Taking this into consideration, the value of the land, as a whole, is $15,000 and the trees and crops have a separate additional value of $15,950, that is, a total of $30,950 for both the land and crops of said parcel.

"The witness did not explain, nor can we understand, how he reached such figures. We find, on the contrary, that the witness himself, on estimating separately and individually the parcels marked in the drawing, Exhibit No. 1 of the defendants, made the following appraisal: The parcel·having fruit trees and coffee, $550 the land and $250 per acre for the trees and crops, that is, at the rate of $800 per acre including everything; the parcel of sugar cane, at $800 per acre including the crop; and the parcel of grass at the rate of $350 the land, and $100 the crop per acre. Thus we see that according to these figures the appraisal made of said piece of land by the witness would give the following result: 8.40 acres of fruit trees, coffee and sugar cane at $800 per acre, $6,720; and 1.60 of grass at $450 per acre, $720; that is, a total amount of $7,440, including the land, the trees and the crops. The witness tried to explain on one occasion that the separate values fixed by him refer solely to the land and not to the crops. If this is so we can not understand the discrepancy between said amount and the $15,000 which according to the witness was the value of the land without the crop. The witness did not explain either, nor do we understand, why he appraised the trees and the crops at $15,950, that is, at an average rate of $1,595 per acre, when, on the other hand, he fixed the value of the crops as follows: sugar cane, 20 tons per acre, at $10 per ton, $200 per acre and the grass $100 per acre. His testimony as to the value of the coffee and fruit trees is vague and inaccurate. While in part of his testimony he says that he assessed coffee plantations, in Mayagüez similar to the condemned parcel, at the rate of $125 per acre, yet he appraised the coffee plantation of said tract of land at from $800 to $900 per acre. This same confusion exists as to the appraisal he made of the orange, grapefruit and trees plantations. Nor do we understand why the witness appraised the sugar cane plantation producing only 20 tons per acre, at a higher price than the plantations he assessed in Guánica, Guayama, and Humacao, which produce from 80 to 110 tons per acre. It should be remembered that the witness appraised the sugar cane plantation of Central Machete at $700 per acre and those of Central Guánica at $800 including in both cases the sugar cane and the ratoons. There was no showing that the location or other elements to be considered in making an appraisal was more favorable in connection with this piece of land than as compared with the other

property which he had assessed. It should be borne in mind that in the parcel taken there were no buildings or structures of any sort. From the inspection we made it appears that the soil of the parcel of land, as soil for sugar cane, is of an inferior quality. The cane growing thereon is scarce, dry and feeble. The parcel marked in the drawing as of 2.04 acres is on the sloping part of the hill whose top marks the eastern boundary of the land. The coffee plantation consists of some coffee shrubs dispersed throughout certain parts of the land which has abundant grapefruit trees some being quite old."

On the other hand the expert evidence of the plaintiff consisted in the testimony of Vicente Riollano, which testimony is summarized by the court thus:

"This witness personally examined the land and made a study of its soil taking into consideration its location, topography, irrigation, cultivation, facilities, ways of communication and productivity. Taking into account these elements and his experience in appraising land similar to this one, he reached the conclusion that the piece of land has a total value of $7,000 which is the value that plaintiff deposited as the just compensation to be paid to the owners. In order to fix this value he divided the parcel of land by separating one acre thereof which fronts the highway and which he believes is suitable for subdividing into lots which may be sold at 25¢ a meter, that is, approximately $1,000 for said acre. The remaining nine acres he appraises at $400 per acre of land without the crops and the trees to which he gives an additional value of $250 per acre. This appraisal of the crops at the rate of $250 per acre is still higher than that given by defendant's own witness, Mr. Archeval, who calculated that each acre of cane would produce 20 tons, which at the rate of $10 per ton amounts to $200 per acre. The value of the land as to the acre which lies in front of the highway is also higher than that given by the expert witness for the defendant, considering the value which he fixed on the land by estimating separately the different parcels into which he subdivided the tract of land, according to his drawing, Exhibit 1 of the defendants. It should be remembered that Archeval appraised the sugar cane plantations in Humacao, Guánica and Guayama at $700 and $800 per acre, fixing a value of $550 per acre for the land and the difference for the crop. If one takes into consideration that the land so appraised pro-

duced from 80 to 110 tons per acre while those of the condemned property only produced, according to Archeval himself, 20 tons per acre, it is readily seen that the appraisal made of the nine remaining acres by witness Riollano, even considering that said nine acres were suitable for cane, is entirely reasonable."

The evidence also showed that appellants purchased in 1945 three parcels of land which formed a single property of 424 acres, comprising the 291 acres from which the piece of ten acres was segregated, for $50,000, and that defendant Lorenzo Anadón testified that he had made improvements in the whole property. It also tended to establish that the ten acres condemned are situated in the best part of the property. Even accepting that they are, we do not believe that they have a value of more than $3,000 per acre, as urged by appellants, since for the whole property they merely paid $117 per acre. The amount of $7,000 granted by the court, that is, $700 per acre, is in our opinion a just and reasonable value and it is consistent with the evidence which was believed by the court and it did not err in so deciding. We do not believe that the charge of prejudice, passion and partiality, based on isolated phrases made by the court during the trial, is justified.

The judgment should be affirmed.

Mr. Justice Negrón Fernández did not participate herein.

