UNITED STATES of America, Appellee,

v.

**Wake PAYNE and Delight Payne, his wife, Appellants.**

UNITED STATES of America, Appellee,

v.

**Lowell C. FERGUSON and Joan M. Ferguson, his wife, Appellants.**

UNITED STATES of America, Appellee,

v.

**Buena FOSTER, Appellant.**

UNITED STATES of America, Appellee,

v.

**Emzie ELLER and L. E. Eller, her husband, Appellants.**

UNITED STATES of America, Appellee,

v.

**Julia Dixie ELLER and Vaden G. Eller, her husband, Appellants.**

**Nos. 10413–10417.**

United States Court of Appeals
Fourth Circuit.

Argued June 1, 1966.

Decided Oct. 19, 1966.

North Wilkesboro, N. C., on brief), for appellants.

William M. Cohen, Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, and William H. Murdock, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BELL, Circuit Judge, and HEMPHILL, District Judge.

HEMPHILL, District Judge.

Appellant landowners appeal from the order of the district court which affirmed the findings of a condemnation commission regarding the investigation and admeasurement of damages from a flowage easement over the appellants' lands.

In the flowage easement area certain state roadways were relocated by agreement between the state and the United States. Some were not. The roads affecting these appellants were not relocated. They are subject to periodic flooding at remote intervals now as they were before the construction of the dam but as a result of the dam the normal run-off of the waters will be retarded so that water may be held on the road—impounded—for a matter of several days after the occasion of the flooding. Damages were awarded on the basis of the difference in the fair market value of the affected lands before and after the taking of the easement. The fact that the appellants' land was subject to an existing easement for the road was duly considered and they were compensated for the added burden of the flowage easement. The appellants excepted to the findings and appealed, charging that there was error in failing to award damages as a result of the impounding of water on the public road by and through their property. The error charged, as we ascertain it, is that no consideration was given to evidence introduced that the impounding of waters on the road would isolate the property for periods which would affect and diminish the market value of the land; that these landowners' damages should not be computed on the same basis, there-

W. H. McElwee, North Wilkesboro, N. C. (John E. Hall and McElwee & Hall,

fore, as those upon whose lands the roads had been relocated. In effect the appellants contend that the fair market value of their lands with the road was enhanced by the road "before" the taking. Unless the findings of the commission be shown to the district court to be "clearly erroneous" they must be accepted, United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964), and unless this court, in turn, finds error in the acceptance or rejection by the district court, the decision must be affirmed, United States v. Carroll, 304 F. 2d 300 (4th Cir. 1962); United States v. Certain Interests in Property, 296 F.2d 264 (4th Cir. 1961); United States v. Twin City Power Co., 248 F.2d 108 (4th Cir. 1957).

The procedures broadly set forth for the judicial use of a commission in United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964), appear to have been fully satisfied in the proceedings below. The Commission was fully instructed on the law and the procedure required to produce a report which would reveal the reasoning they used in deciding on a particular award, what standard they tried to follow, what line of testimony they adopted, and what measure of severance damages they used. See United States v. Merz, 367 U.S. 192, 198, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); Morgan v. United States, 356 F.2d 17 (8th Cir. 1966). See also United States v. Twin City Power Co., 248 F.2d 108 (4th Cir. 1957); United States v. Willis, 141 F.2d 314 (4th Cir. 1944). In each instance the report summarized, by named witness, the testimony for landowners and for the government. Findings were submitted as to (a) the highest and best use of the land at the time of taking, (b) the fair market value at the time of taking, (c) the fair market value immediately after the taking, and (d) the value of the estate and interest condemned. A "comment" included with each finding summarized the reasoning used. Various appendices were attached to fully supplement and explain the Commissioners' views.

The report of the Commission to Judge Stanley spoke pertinently of the point under contention:

That the landowner is entitled to just compensation for the flowage easement being imposed upon his lands already subject to the easement of the State Highway Commission is not questioned. Clearly, an additional burden is placed upon his lands for which he is entitled to be paid in accordance with the before and after rule of damages and in accordance with the instructions of the Court. The landowner's entire tract was naturally more valuable because it was traversed by a public road, and evidence of this fact was considered by the Commission in determining before and after values. The Commission did not, however, adopt the landowner's evidence and theory of damages which insisted upon "road damages" for future conjectural or speculative losses which they might sustain by reason of flooding and which were not, in the opinion of the Commission, related to the fair market value of the property before and after its taking. In the event of such personal loss or damage outside the easement area, the question of whether the landowner might at that time institute suit against the Government under the provisions of the Tucker Act, 28 U.S.C. § 1346 is not a question before the Commission.

■■ There is no basis for upsetting the award on the basis of diminished ingress and egress during flooding. Access rights can be burdened or destroyed through eminent domain upon just compensation, Martin v. United States, 270 F.2d 65 (4th Cir. 1959); Duke Power Co. v. Toms, 118 F.2d 443 (4th Cir. 1941), and in view of the Report this factor has been fairly considered by the Commission. It is the effect of the diminished access on the fair market value to which the argument is directed—the "theory of damages" which was rejected by the Commission. The Commission determined that future conjectural and speculative losses did not relate to "the fair

market value before and after the taking." The district court correctly accepted this finding. Just compensation does not include business losses or damages for frustration of plans. E.g. United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1923); United States v. Certain Land in Baltimore County, Md., 209 F.Supp. 50 (1962). Possible future effects of the taking, if not reduced to reasonable probability, likewise, because of their speculative nature, are not to be included in the award. E.g. United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934). The district court was in complete accord with the Commission that "road damage" would be highly conjectural and speculative. We must hold the accord was supported by sound legal theory and the decision of the court was correct.

■ Appellants Wake and Delight Payne have taken a further exception to the awards made in that they claim the Commission failed to compensate them for threatened flooding of the basement to their home. The Report shows the consideration given to the claim and the regard had for its merits:

> With reference to the defendant landowners' basement being flooded with water because the drainage pipe extends below the 1180 feet contour line of the easement area, the Commission concluded that the landowners would have to take the same precautions to prevent such flooding as they did, or would have had to take, prior to the construction of the dam. The only witness for the defendant landowners indicated that when the drainage line was installed, he realized that the end of the same was below the water level of the 1940 flood. It is obvious, therefore, that during times of flooding, both before and after the Government's condemnation of the flowage easement,

the defendant landowners would of necessity have to cap or in some other manner plug the end of the drainage line to prevent flooding of their basement and thereby minimize or eliminate flooding damages. Since the construction of the dam and the condemnation of the flowage easement by the Government, the evidence would indicate that it would be necessary for the defendant landowners to leave such cap or plug at the end of the basement drain line on for a longer period of time than would have been necessary prior to the construction of the dam because the drainage or runoff will now be delayed in the various flood planes. However, the Commission concluded that this slight inconvenience had no material bearing on the fair market value of the defendants' lands.

The Report received the careful scrutiny of the District Judge. It is the opinion of this court that the district court was correct in accepting the findings of the Report in this regard as well for the record would not support a finding of "clear error."

Affirmed.