UNITED STATES of America,
Appellee,

v.

William R. MATTOX, Appellant.

In the Matter of UNITED STATES of America

v.

28.91 ACRES OF LAND, MORE OR LESS, Situate in BRAXTON COUNTY, WEST VIRGINIA, and William R. Mattox et al., and unknown others.

No. 10849.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 8, 1967.

Decided March 8, 1967.

———◆———

R. J. Thrift, Jr., Fayetteville, W. Va. (Mahan, Higgins, Thrift & Graney, Fayetteville, W. Va., on brief), for appellant.

George R. Hyde, Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Milton J. Ferguson, U. S. Atty., and Charles M. Love, III, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and J. SPENCER BELL and WINTER, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

The defendant, Mattox, appeals from a condemnation proceeding judgment which limited his recovery to the value of the property taken and denied severance damages.

The United States took by condemnation a tract of 28.91 acres owned by Mattox in Braxton County, West Virginia. This was one of several tracts totalling 7211.14 acres conveyed to him in fee by deed dated November 21, 1957. By another deed of the same date, Mattox obtained a lease for 90 years for timber rights and rights of way across another tract of 2046.878 acres which lay between the 28.91-acre tract and the remainder of the 7211.14 acres described in the first deed. For convenience, we shall refer to the 28.91 acres as the condemned tract, the remainder of the 7211.14 acres as the fee tract, and the 2046.878 acres as the leased tract. The condemned tract is flat bottom land lying along the Elk River. Both the fee and the timber tracts consist of wild mountain lands covered by a substantial growth of marketable timber which constitutes the chief value of the property.

At the pretrial hearing, the defendant announced that he would offer evidence showing severance damage to the fee tract. The court in a letter opinion advised that it was " * * * of the opinion that evidence of the mere frustration of plans for the use of the residue of the 7211.14 acres of timberland would * * * be inadmissible." When the case came on for jury trial the parties stipulated that the value of the condemned tract was $12,350.00, and this is not in issue. It was also agreed that Mattox was not, under the law, entitled to any compensation for severance damage to his leased tract, and that point too is not in issue. Mattox was then allowed to make a proffer of evidence to show severance damages to the fee tract, the Government objected, and the court sustained the objection. Counsel for Mattox then read into the record what his evidence would show. There being no remaining issue of fact, the jury was dismissed and the court entered a judgment for the stipulated amount for the condemned tract, from which judgment Mattox appeals in order to bring the issue of severance damages to this court.

Mattox's proffer of evidence was substantially as follows. His witnesses would have testified that the fee tract was worth from four to five dollars an acre devoid of the timber and approximately $54.00 to $55.00 an acre with the timber on it. That the condemned tract had been used for a mill site some forty or fifty years before during a "timber boom" in West Virginia. That the only other reasonably adaptable mill site was some sixteen miles away. That the Government's taking deprived the owner of the only available mill site within sixteen miles and that this deprivation diminished the fair market value of the fee tract by $150,000.00 at the least, from $378,000.00 to $228,000.00.

We now turn to the facts which are accepted by the parties as being the record upon which the judge's decision below was based. These facts were taken from maps, plats, depositions, public records, memoranda of counsel which were on file

in the proceeding, and statements made in open court. The defendant makes no objection to the manner in which the issue is raised on this appeal.

The Sutton Dam and Reservoir Project on the Elk River in West Virginia was initiated under authority of the Flood Control Act of June 22, 1936, 49 Stat. 1570, 33 U.S.C. § 701a (1964), and the Flood Control Act of June 28, 1938, 52 Stat. 1215, as amended, 33 U.S.C. § 701b (1964).

In August 1949 acquisition of land necessary in constructing the dam was begun. In August 1950 acquisition of the land required for area of the reservoir was commenced.

The actual construction of the Sutton Dam was begun in November of 1956 and completed in June of 1960.

On November 21, 1957, the defendant's deeds to all three tracts here involved were recorded. For the lease tract, the consideration was $30,000.00. For the fee tract including the 28.91 acres which were condemned, the defendant paid $45,-000.00

In 1950, the relocation of a spur line of the Baltimore and Ohio Railroad which had formerly passed through the reservoir area including the area of the condemned tract was begun. Condemnation proceedings were instituted to acquire the necessary land for the relocation of the right of way. This work was interrupted by the Korean War but was resumed in 1955 and completed in 1958. The new right of way was at a substantially higher level and the tracks laid thereon did not connect with the old right of way which passed through the condemned tract. The old track, which ran through the condemned tract, had last been used in 1942. As early as 1949 the rails had sunk below the level of the ground, erosion and slides had damaged

much of the road bed, and floods had removed most of the bridges, including one railroad bridge at the entrance to the condemned tract.[1]

The crux of the defendant's argument is contained in this quotation from his brief: "The property taken has been and was contemplated as a mill site for the production of timber and by virtue of its very existence and ownership by the same individual gave to the remaining portion of this timber land an additional value. * * * The purpose for which all of this property was acquired was an integrated purpose whereby each segment of the property would contribute to the value of the whole. Holding this property for the advent of an advantageous sale or development was just as much a use as though timbering operations had been conducted thereon." In support of his contentions the defendant relies upon Baetjer v. United States, 143 F.2d 391 (1 Cir.), cert. denied, 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618 (1944).

We can agree that the physical proximity and the possibility of an integrated use of two separate tracts would give rise to an additional economic value to each, but it does not follow that the mere proximity or possibility of the integrated use will confer upon the owner a right to severance damages. Nor does the holding of such advantageously situated property for sale automatically entitle the owner to severance damages. In addition to these factors, there must exist a reasonable probability that the separate tracts would have been combined for such integrated use. The error in the defendant's argument is that it does not reflect the realities of the situation. It fails to take into consideration the fact that when the defendant purchased the three tracts, the Government project was already well under way.

[1]. The defendant argued that the railroad would still have been accessible by building a short spur or side track. The proferred evidence did not deal with this point. The Government argued that the long standing abandonment refutes any contention of an existing integrated use of the condemned tract with the other tracts and that the relocation of the right of way and removal of the rail lines was notice to the defendant at the time of his purchase that the condemned tract was, at least probably, not accessible as a mill site.

Thus the integrated use of the fee tract and the mill site was if not actually impossible at least highly improbable. It offends our sense of justice that the Government should be required to pay the defendant an alleged damage to his fee tract which, if it occurred at all, occurred before he purchased.

█ The plan which constituted the basis for the defendant's evaluation of his fee tract was doomed when the flood control project was initiated. This fact became more obvious as each step in the progress of the project took place. In 1949 the land for the dam site was acquired, and in 1950 the acquisition of land for the reservoir started. In that year too, the relocation was begun of the long neglected and dilapidated railway track which had served the mill site some 40 years previously. In 1956 the construction of the dam began, and it was a year in progress when the defendant purchased his property. Projects of such importance do not take place in the wilds of the West Virginia mountains without widespread knowledge thereof throughout the community. The defendant's proffer of evidence and concessions of counsel in our court do not deny that he had knowledge of these background facts, though he does apparently contend that he had no personal knowledge that this particular 28.91-acre tract would be taken. We think the trial court's conclusion that the possibility that land lying on the banks of the Elk River, which was already being dammed, would be condemned was sufficient to make the defendant's contemplated joint use of that property too improbable to justify such use as a measure of damages in this case. Whether the defendant blindly or deliberately bought into this situation does not affect the improbability of his plan. In United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 275, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943), in discussing this issue the Court said:

"An owner of lands sought to be condemned is entitled to their 'market value fairly determined.' United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336. That value may reflect not only the use to which the property is presently devoted but also that use to which it may be readily converted [citing cases]. In that connection the value may be determined in light of the special or higher use of the land when combined with other parcels; it need not be measured merely by the use to which the land is or can be put as a separate tract. McGovern v. New York, 229 U.S. 363, 33 S.Ct. 876, 57 L.Ed. 1228. *But in order for that special adaptability to be considered, there must be a reasonable probability of the lands in question being combined with other tracts for that purpose in the reasonably near future.* Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236. *In absence of such a showing, the chance of their being united for that special use is regarded 'as too remote and speculative to have any legitimate effect upon the valuation.'* McGovern v. New York, supra, 229 U.S. page 372, 33 S.Ct. page 877." [Emphasis added.]

█ We are not, in our approach to the problem, bound by any mechanical rule which requires us to confine our considerations to the moment of taking. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), involved a reclamation project in California which required the relocation of a railroad right of way. After several alternative routes were staked out, the condemnees bought property in and near one of the alternative routes which was later chosen by the Government. The existence of the project and the possible presence of a railway line enhanced the value of the owner's property during the interval between the commencement of the project and the declaration of taking. The Court held that the rule requiring the property to be evaluated at the time of the declaration did not prevent the jury from deducting any increment in value which had theretofore accrued by reason of the government project. The Court pointed out that the owner's indemnity may "be

measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose." Id. at 373–374, 63 S. Ct. at 280. In the case at bar we agree with the district court that it would have been a mistake to accept a mechanical evaluation of the defendant's fee tract on the day before and the day after the declaration of taking was filed. Long before the filing of the declaration, the defendant's alleged contemplated plan had become so improbable as to make it "too remote and speculative to have any legitimate effect upon [the] valuation" of the fee tract.

If parties may not buy in and speculate on a probable increase in value by reason of a government project, we see no logical reason why they should be allowed to buy in and recover severance damages for an alleged diminution in value which has already occurred.

Baetjer v. United States, supra, does not get the defendant home safe. It simply holds that physically separated tracts may be integrated in their use in such a way as to entitle an owner to severance damages. But there the case ceases to help the defendant because in *Baetjer* the integrated use was in operation long before the Government began its proceedings. There was no element of speculation or doubt about the integrated use, nor did the condemnee buy in after the government project was begun. While the language in *Baetjer* and in other cases may support the defendant's contentions, we have not been shown a case where the facts are sufficiently similar to justify our extending the rule to cover this case. The courts have wisely left the matter of applying the rules for severance damages to the sound discretion of the individual trial judge to be applied by him to the facts in each case. Sharpe v. United States, 112 F. 893 (3 Cir. 1902), aff'd, Sharp v. United States, 191 U.S. 341, 354, 24 S.Ct. 114, 48 L.Ed. 211 (1903).

We think therefore that the district court was in the exercise of its sound discretion justified in rejecting the defendant's proffered evidence as too theoretical and speculative to constitute a basis for measuring severance damages in this case.

Affirmed.