582 F.2d 878
 UNITED STATES of America, Appellee,
v.
97.19 ACRES OF LAND, MORE OR LESS, located IN MONTGOMERY,
WASHINGTON AND ALLEGHANY COUNTIES, MARYLAND,
Hollis E. Hopkins, et al., and unknown
owners, Appellants.
 No. 76-2030.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 10, 1977.
Decided Sept. 19, 1978.
 
 Rex L. Sturm, Rockville, Md. (Brown & Sturm, Rockville, Md., on brief), for appellant.
 Eva R. Datz, Atty., Dept., of Justice, Washington, D. C. (Peter R. Taft, Asst. Atty. Gen., Frank S. Craig, III, H. David Barr, Edmund B. Clark and Jacques B. Gelin, Attys., Dept. of Justice, Washington, D. C., on brief), for appellee.
 Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.
 WIDENER, Circuit Judge:
 
 
 1
 This is an appeal from the award of damages in a condemnation suit. As we are of opinion the district court erred in the evidence it did not permit the jury to consider in ascertaining the award attributable to the taking, we vacate and remand for a new trial.
 
 
 2
 The land in question is a 6.16 acre tract of a 151.86 acre farm located in Montgomery County, Maryland and is being condemned by the government for inclusion in the Chesapeake and Ohio Canal National Historic Park. The parcel lies along two roads: on its west side, Whites Ferry Road, a macadam road, and, on its south side, River Road, which is dirt. Except a small additional amount of frontage on Whites Ferry Road, variously described as from 60 to 130 feet, in the northwest portion of the farm, the condemnation would take all of the farm's frontage on the macadam surface road.[1]
 
 
 3
 The farm's driveway comes out near the intersection of Whites Ferry Road and River Road. Although the driveway was originally a part of the property being taken, the government amended its complaint so as to reserve to the owners an easement of ingress and egress over the driveway.[2]
 
 
 4
 At trial, when the landowner attempted to prove the value of the 6.16 acre parcel, the district court excluded that evidence. It limited the proof of damages to evidence of the difference between the value of the entire farm before the taking and the value of the remainder after the taking. In so doing, the court excluded various items of evidence, such as the sales price of comparable small parcels. Because we believe the district court erroneously restricted the evidence of damages presented to the jury, the judgment entered on the jury's verdict must be set aside and the case remanded for a new trial.
 
 
 5
 When the government takes all of an owner's property, the formulation of damages is basic: the owner is entitled to the value of the land taken. However, when, as here, the government does not take an entire tract of land, but only a portion thereof, the problem becomes more complex in that the owner also is entitled to compensation for such damages to the part he retains as are consequential to the taking. See Miller v. United States, 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336 (1942); 4A Nichols, The Law of Eminent Domain § 14.1 (Rev.3d Ed.) (hereafter Nichols ).
 
 
 6
 Hence, "where part of an owner's tract is taken by an exercise of the power of eminent domain, the owner is not confined to recover for the part taken only, but is entitled to recover also for the damages thereby visited upon the area remaining in his title, possession and use." 4A Nichols § 14.2.
 
 
 7
 The difficulty which has arisen in this case relates to the manner in which the damages, actual and consequential, are computed. The Nichols treatise notes at least two methods by which the award may be ascertained. One formula states that the compensation to which the landowner is entitled equals the value of the land taken plus the diminution in the value of the remaining land. 4A Nichols § 14.23. In contrast, the other method computes damages to be the difference in the value of the entire tract before the taking and the value of the portion remaining after the taking. Id. The landowner here attempted to present evidence to the jury consistent with the first theory by proving the value of the parcel actually taken; however, the district court refused to allow the introduction of evidence of the separate value of the parcel condemned, restricting the evidence as well as the theory of the case to the before and after rule as applied to the whole tract before and the remaining land after the taking, the government's theory of damages, and the whole case.
 
 
 8
 Thus, while the government was allowed to go forward and present evidence as to its theory of recovery, the landowner was precluded from presenting to the jury her evidence as to her theory of compensation. We believe that, under West Virginia Pulp & Paper v. United States, 200 F.2d 100 (4th Cir. 1952), and other cases, the landowner was entitled to prove the value of the parcel actually taken, plus the severance damages to the residue.
 
 
 9
 While we note that the Nichols treatise, after discussing the alternate methods for formulating damages in the case of a partial taking, prefers the before and after rule as the better formula because of simplicity of application, Nichols § 14.232(1), more importantly we observe that this court has considered the issue and has reached a different conclusion. As stated by the court in West Virginia Pulp & Paper Co. v. United States, 200 F.2d 100 (4th Cir. 1952), the "compensation to be awarded" in a partial taking is "the value of the land taken plus the depreciation in the market value of the remainder." 200 F.2d at p. 104. Thus, this circuit measures damages as the fair market value of the parcel actually taken plus the severance damages, if any, to the portion of the tract retained by the landowner, ". . . the difference in market value of the residue before and after taking" ordinarily being a "fair measure of severance damages." United States v. The Board of Education of the County of Mineral, 253 F.2d 760, at p. 763 (4th Cir. 1958). It follows then that the landowner must be allowed to prove the value of the part taken, and then to prove whatever damage might accrue to the remainder as a result of the taking. The rule approved by this court necessarily contemplates permitting the introduction of evidence which may include the separate valuation of the parcel actually taken and the residue. United States v. Wateree Power Co., 220 F.2d 226 (4th Cir. 1955); see also United States v. Mattox, 375 F.2d 461 (4th Cir. 1967).
 
 
 10
 The southern boundary of the property condemned, as well as that of the remaining part of the farm, lies along River Road, with the road to the south of the property. Along River Road is a ditch of some consequence, as well as creeks, which must be bridged to provide ready vehicular access to the southern part of the farm. The district court excluded all evidence of the cost of building new access on the ground that the access after the taking was the same as that before the taking. We are of opinion the access before and after the taking was not the same. Before the taking, the farm had as its principal access more than 100 feet in fee simple ownership along hard surfaced Whites Ferry Road to the west of the property and at the southwest corner of the farm. After the taking, the farm was left with no fee simple access to Whites Ferry Road at that point, rather merely a 20 foot right of way, not even owned in fee simple, and on which, so far as this record shows, the owners could not even replace a gate with a cattle guard should they think that prudent in the operation of their farm. The right of way, in addition, would be subject to all sorts of inconvenience because of its joint use with the public, the owners, for example, having no right to fence it. Furthermore, a county ordinance or regulation required fee simple access to a public road 25 feet wide for subdivision of the land. The 20 foot wide easement obviously would not be an acceptable substitute. Other illustrations are not necessary to show that the access was not the same before and after the taking. Cf. United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165 (1911).
 
 
 11
 Although we think the ruling that the access was the same was not correct, we do not have to now rule, however, that the district court's ruling as to the cost of the new access was erroneous. We do note in passing, however, that, although it may be that the cost of new access as such might not be admissible as a separate item of damage, nevertheless, under certain conditions, if it reasonably has to be constructed, to use the remainder of the land for its highest and best use, that item may properly be taken into account by an expert witness in valuing the diminution of the residue of the land before and after the taking, if any such appears. We held this in West Virginia Pulp and Paper, p. 104.
 
 
 12
 Accordingly, we do not decide whether the cost of providing access to the residue was admissible, because, when the case is retried in the light of this opinion, it may not be offered, or, if offered, will be in the light of a different rule as to the admissibility of evidence than the court used in the first trial.
 
 
 13
 The government relies on the cases of United States v. Mattox, 375 F.2d 461 (4th Cir. 1967); United States v. Payne, 368 F.2d 74 (4th Cir. 1966); and United States v. Wise, 131 F.2d 851 (4th Cir. 1942), for the propositions that the rules for severance damages are applied in the discretion of the district court and that adding up various elements of damage to arrive at just compensation is improper. None of those cases are in point. In Mattox, the district court ruled inadmissible evidence of severance damage to the residue for "the mere frustration of plans for" its use. In that case, the integrated use of the residue with a lumber mill site which was condemned was, "if not actually impossible, at least highly improbable." That situation does not pertain here where the district court instructed the jury as to the highest and best use of the land. Payne was a case tried with commissioners rather than to a jury. A separate item for loss of access by flooding a road from time to time was not allowed as a part of the award, but the matter had been considered in the case in arriving at the award in "determining before and after values," as was made clear by the commissioners' report to the district judge. The holding of Wise, indeed, is contrary to the government's position, for that case allowed evidence to be admitted by an appraiser showing item by item how he had arrived at his conclusion as to the value of the taking. The government appealed on this point and lost. The district court had properly instructed the jury that it must view the property "as the taking of a single piece of property," but that they were "to consider every physical fact and circumstance and everything that is on the land and under the land that has been added to it, for the purpose of arriving at a final figure," and further told the jury that such evidence "is admitted for the purpose of informing the jury of all the physical facts and circumstances surrounding the property being taken and the improvements thereon."
 
 
 14
 Another case in this circuit must be mentioned since it is very nearly in point with the case at hand, perhaps even binding precedent, as to the admissibility of evidence. In Cade v. United States, 213 F.2d 138 (4th Cir. 1954), an expert witness "placed a value of $35,070 on the land taken and fixed the severance damage sustained by the remainder of the tract at $5,000." He explained how he arrived at these figures by separately valuing bottom land, upland, woodland, and buildings. The trial judge struck out his testimony on the ground "that the overall value to which he had testified had been arrived at by adding together the values he had placed on the various items." Two other witnesses had similarly testified as to the value of rock deposits on the land and had their evidence excluded. We reversed, holding that all of those rulings were erroneous.
 
 
 15
 While we said, at p. 142, that "the trial judge was correct in thinking that the property should be valued as a whole for the purpose of assessing compensation for the taking," we continued "this does not preclude the admission of testimony showing the particular elements of value for consideration by the jury in arriving at the overall value which they are required to find as the basis for compensation." We further think the Cade case stated a perfectly permissible method of evaluation as follows: "The witness testified to the value of the land as a whole after giving the valuation which he had placed upon the various parts. This is the way that any man of intelligence would have arrived at the valuation of the property for ordinary business purposes and we know of no reason why a witness testifying under oath as to his opinions should not arrive at a valuation in the same way." We held the testimony to be "clearly admissible."
 
 
 16
 In this case, as in most condemnation cases, the amount of what the award should be varied widely from witness to witness. If the witness for the landowner may have seemed too liberal, the government's witnesses were equally as conservative. With respect to objections for relevancy, unless the testimony of an expert witness is irrelevant as to the real subject at hand, which is the true loss of the landowner, it should not be excluded merely because a witness has arrived at his conclusion under a theory of compensation not adopted by the other side or by the district court. It is perfectly permissible for an expert witness to arrive at his opinion of an award in a way "that any man of intelligence would have arrived at a valuation of the property for ordinary business purposes." And the fact that the other side may not agree with that theory does not mean that the jury should not consider the evidence. In the case at hand, the government's witnesses in general conformed to the before and after rule which we have mentioned, while the landowner's witness in general conformed to the rule valuing the part taken and damage to the residue separately, adding up those figures for his idea of the award. We think that evidence as to both theories should have gone to the jury and the jury then should have made its award.
 
 
 17
 Accordingly, the judgment of the district court is vacated, and the case is remanded for a new trial.
 
 
 18
 VACATED AND REMANDED.
 
 
 
 [1]
 The parcel presently condemned borders on its north side with land previously acquired by the government, resulting in the existence of a buffer of government land between the road and the western boundary of nearly all the farm. However, the farm does include a narrow strip of land on the western side of Whites Ferry Road, between that road and the C & O Canal
 
 
 [2]
 The landowner has objected to the amendment of the complaint, claiming that the reservation of the easement in favor of the landowner constituted compensation in a form other than money. We have considered this assignment of error and find it without merit. The government did not file a declaration of taking, only a complaint. So, the amendment being timely, and no prejudice being shown, allowing the amendment was not error since the government could have excluded the easement in the original complaint. We express no opinion on another fact situation